PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REGINALD GHAFFAR MCFADDEN,

        Plaintiff,

   -v-                             13-CV-559-FPG
                                          DECISION AND ORDER

BRIAN FISCHER, Com-DOCCS, et al.,

        Defendants.
_____

REGINALD GHAFFAR MCFADDEN,

        Plaintiff,

                                  16-CV-6105-FPG
   -v-                             DECISION AND ORDER

ANTHONY  J.  ANNUCCI,  JR.,  Acting
Commissioner: DOCCS, et al.,

        Defendants.
_____

## PROCEDURAL BACKGROUND

    *Pro se* Plaintiff Reginald Ghaffar McFadden, currently an inmate at the Attica

Correctional Facility ("Attica C.F."), had filed the first of the two above-captioned *pro se*

actions, No. 1:13-CV-559-FPG ("First Action"), in 2013 alleging a myriad of claims against over

50 Defendants, including a number of supervisory officials of the New York State Department of

Corrections and Community Supervision ("DOCCS") and correctional officers and employees at

a number of different correctional facilities within the State.  The gravamen of the First Action

Complaint was Defendants' alleged failures to provide Plaintiff with adequate medical treatment

for a number of long-standing medical conditions.  The Complaint, as described by the Court,

was akin to an autobiographical narrative of Plaintiff's time in DOCCS's custody stretching back to 1995, when Plaintiff was first incarcerated.   Plaintiff also sought permission to proceed *in forma pauperis.*

The Court entered an Order in the First Action on July 3, 2013, denying Plaintiff's Motion to Proceed *in forma pauperis* on the basis that he had garnered "three strikes" [1] and had not established that he was in "imminent danger of serious physical injury" at the time he filed the Complaint.  First Action, ECF No. 6.  Plaintiff then filed a Motion to Amend the Complaint in an attempt to assert claims of imminent danger of serious physical injury and a Response to the Order denying his Motion to Proceed *in forma pauperis.*  First Action, ECF Nos. 7, 8. Plaintiff was granted permission to file an amended complaint, with the instruction that the amended complaint must not again be "a highly conclusory and repetitive attempt to re-allege claims of medical conditions that have in the past been soundly rejected by the courts as setting forth a claim of imminent danger."  First Action, ECF No. 9, at 3.  Plaintiff filed an Amended Complaint on December 29, 2013.  First Action, ECF No. 10.  On February 28, 2014, after reviewing the Amended Complaint, the Court entered an Order again finding that Plaintiff had not established that he was in imminent danger of serious physical injury.  First Action, ECF No. 13.  Plaintiff was therefore directed to pay the filing fee and advised that if he did not pay the filing fee by a certain date the action would be dismissed.

Plaintiff then filed an Interlocutory Notice of Appeal (First Action, ECF No. 14), which was conditionally dismissed by the Second Circuit, effective June 23, 2014, based on Plaintiff's failure to file a Prisoner Authorization.  First Action, ECF No. 15.  This Court thereafter entered an Order and Judgment dismissing the First Action without prejudice based on Plaintiff's failure

---

[1]     At that time, a routine search of the Federal Judiciary's Public Access to Court Electronic Records System ("PACER") revealed that Plaintiff had filed well over 30 civil actions and appeals in the federal district courts and United States Court of Appeals for the Second Circuit.

to pay the filing fee.  First Action, ECF Nos. 16, 17.  Plaintiff then proceeded to file three separate Motions for Reconsideration of the Court's Order denying his Motion to Proceed *in forma pauperis*.  First Action, ECF Nos. 18, 21, and 22.  The three Motions raised essentially the same grounds for reconsideration, and the second and third Motions relied primarily on the arguments raised in the first Motion.  Plaintiff claimed that in finding that Plaintiff had not shown that he was in imminent danger of serious physical injury, the Court had relied on a prior decision of the Northern District of New York in an action that had raised claims strikingly similar to the ones raised in this (First) action, which had found that Plaintiff had not shown that he faced an imminent danger of serious physical injury.  Plaintiff claimed that at the time of filing that action in the Northern District he had been suffering from health problems.  After filing the first Motion for Reconsideration, Plaintiff filed a Notice of Appeal from the Order dismissing the First Action, which was dismissed by the Second Circuit based on Plaintiff's failure to pay the filing fee.  First Action, ECF Nos. 19, 21.

On December 3, 2015, the Court denied all three Motions for Reconsideration.  That Order stated that despite Plaintiff's claims that the Court had relied on the prior decision in the Northern District action, the Court had independently reviewed the allegations in this action and found that Plaintiff had not set forth a plausible claim of imminent danger of serious physical injury.  First Action, ECF No. 24, at 3-4.

On November 16, 2015, Plaintiff filed yet another action in the Northern District of New York, along with a motion to proceed *in forma pauperis*.  *McFadden v. Annucci, et al.*, 9:15-CV-1354 (DNH/DEP) ("N.D.N.Y. Action").  Plaintiff alleged, among other things, that he was being denied adequate medical care for his serious medical needs at the Attica C.F., including treatment for Hepatitis C.  Specifically, Plaintiff claimed that on February 19, 2015, certain

members of the medical staff at the Attica C.F. had denied him treatment for Hepatitis C. N.D.N.Y. Action, ECF No. 7, at 24.  The Amended Complaint also alleged events that occurred at the Auburn ("Auburn C.F.") and Southport Correctional Facilities ("Southport C.F."), including claims of retaliation and the denial of ""essential heart medication" upon his transfer to the Southport C.F.  *Id.* at 11.

Upon review of the Amended Complaint and Motion to proceed as a poor person in the N.D.N.Y. Action, the Northern District severed those claims that had allegedly occurred at the Attica C.F. and Southport C.F. and transferred them to this Court.  N.D.N.Y. Action, ECF No. 12, at 10-13.  Upon transfer of the severed claims to this Court, the Clerk of Court opened a new action under Civil Action Number 6:16-CV-6105-FPG ("Second Action").   The Northern District, in the same Order severing and transferring the claims to this Court, also found "preliminar[ily]" that Plaintiff had "sufficiently *alleged* that he was 'under imminent danger of serious physical injury' when he filed this action[]" and therefore granted Plaintiff permission to proceed *in forma pauperis.*  Second Action, ECF No. 12,[2] at 6, n.7 (emphasis supplied)).

While the Second Action was still pending in the Northern District of New York, Plaintiff filed two Motions for a Temporary Restraining Order and Preliminary Injunction. Second Action, ECF Nos. 3 and 8.  Because those Motions arose out of Plaintiff's conditions of confinement at Attica C.F., the Northern District deferred determination of the Motions to this Court.  Based on the discussion set forth below with regard to the majority of Plaintiff's claims requiring amendment in order to state claims for relief, the Court finds that Plaintiff has not established the necessary criteria for granting the extraordinary relief requested.  *See* Fed. R. Civ. P. 65(a)–(b); *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *Paulsen v. County of*

---

[2]      Upon transfer, the Docket entries in the N.D.N.Y. action became the same docket entries in this District under case 6:16-CV-6105-FPG.

*Nassau*, 925 F. 2d. 65, 68 (2d Cir. 1991) (Plaintiff must (1) demonstrate a likelihood of success on the merits and irreparable injury, and (2) raise serious questions going to the merits, with the balance of hardship tipping in the plaintiff's favor.).

Following the transfer of the those claims in the Second Action that allegedly occurred at the Attica C.F. and Southport C.F. to this Court, Plaintiff filed another—now fourth—Motion for Reconsideration regarding the determination in the First Action that Plaintiff had not alleged a plausible claim of imminent danger of serious physical injury. Plaintiff claims that the preliminary finding by the Northern District in the Northern District (and now Second) Action that he had plausibly alleged that he was under imminent danger of serious physical injury is "newly discovered evidence" under Fed. R. Civ. P. 60(b). He therefore requests the Court to reconsider its prior Orders denying him permission to proceed *in forma pauperis*, to re-open the First Action, and to consolidate it with the Second Action.

Upon filing of the most recent Motion for Reconsideration, the Clerk of Court mistakenly docketed the Motion in the Second Action—6:16-CV-6105G—but not in the First Action. The Court will direct the Clerk to docket the Motion for Reconsideration (Second Action, ECF No. 14) in the First Action as well.

Accordingly, the Court will now address the Motion for Reconsideration in the First Action and screen the Amended Complaint in the Second Action as required by 28 U.S.C. § § 1915(e)(2)(B) and 1915A.

## DISCUSSION

### A. MOTION FOR RECONSIDERATION

The gist of Plaintiff's Motion for Reconsideration is that the Northern District's preliminary finding that he had alleged imminent danger of serious physical injury is newly

discovered evidence under Rule 60(b)(2) of the Federal Rules of Civil Procedure.   This Rule

provides, in pertinent part, that:

> **(b)**     **Grounds for Relief from a Final Judgment, Order, or Proceeding**.   On
> motion and just terms, the court may relieve a party . . . from a final
> judgment, order or proceedings for the following reasons:
>
> (1)     mistake, inadvertence, excusable neglect;
> (2)     newly discovered evidence that, with reasonable diligence, could
> not have been discovered in time to move for a new trial under
> Rule 59(b);
> (3)     fraud (whether previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party;
> (4)     the judgment is void;
> (5)     the judgment has been satisfied, released or discharged; it is based
> on an earlier judgment that has been reversed or vacated; or
> applying it prospectively is no longer equitable; or
> (6)     any other reason that justifies relief.

A motion under subparagraphs (1), (2) and (3) must be made no more than one year after

entry of the judgment or order.   Fed. R. Civ. P. 60(c).   All others must be made "within a

reasonable time . . . ."   *Id.*   Accordingly, Plaintiff's Motion based on what he claims is newly

discovered evidence is not timely.   The Orders denying Plaintiff permission to proceed *in forma*

*pauperis* in the First Action were entered on July 1, 2013 (ECF No. 6) and February 28, 2014

(ECF No. 13).   The Judgment dismissing the First Action was entered on October 30, 2014.   The

instant Motion for Reconsideration was filed on March 4, 2016.

Even if the Court were to construe the Motion for Reconsideration under Rule 60(b)(6)--

"any other reason that justifies relief"[3]--the Motion would nonetheless be denied.

Whether a prisoner has plausibly alleged imminent danger of serious physical injury

under the three strikes rule must be evaluated *at the time the prisoner files the complaint.   See*

*Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009).   The Complaint at issue in the First

---

[3]     *See Castro v. United States*, 540 U.S. 375, 381 (2003) ("Federal courts sometimes will ignore the
legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it
within a different legal category."

Action was filed in May 2013 and the Amended Complaint was filed in December 2013.  The Complaint in the N.D.N.Y. Action was filed in November 2015 and the Amended Complaint was filed on December 7, 2015.  The two courts therefore were evaluating different allegations of imminent danger at vastly different times.  In fact, the time between the filing of the two Complaints in the two actions was over two and one-half years (May 2013 and November 2015).

As the Court found in the First Action, Plaintiff's allegations did not support a determination that Plaintiff was in imminent danger of serious physical injury.  First Action, ECF No. 6, 4-5.  It also found that the Amended Complaint failed to plausibly allege a claim of imminent danger while he was incarcerated at the Auburn C.F. and that there was no nexus between the claims of imminent danger alleged and the claims pled in the Amended Complaint.  Plaintiff's claims, which were conclusory and difficult to understand, had alleged that in 2011 he suffered a heart attack on April 19, 2011 after being illegally confined in SHU for over 16 months.  The Complaint was not filed until May 2013, a full two years plus after the claims alleged in the Complaint had accrued.

Before a prisoner may qualify for the imminent danger safety valve, there must be a nexus between the "imminent danger a three strikes prisoner alleges to obtain IFP status and the legal claims asserted in his complaint." *Pettus*, 554 F.3d at 297.  The more recent finding in the Northern District was that Plaintiff had alleged that he was being denied medical care for his various medical needs at the Attica C.F., including treatment of Hepatitis C.  These allegations are not the same made in the First Action and post-date the filing of the Amended Complaint in the First Action by over two years.  Simply filing complaints which allege, in wholly conclusory terms, that he suffered from a number of serious medical needs and has continually been denied treatment for some or all of those medical needs does not and should not establish that Plaintiff is

entitled to proceed *in forma pauperis* under the exception to the three strike rule in each case he files.

The Court had independently determined in the First Action that, based on the allegations set forth in both the Complaint and Amended Complaint, Plaintiff had not plausibly alleged that he was in imminent danger of serious physical injury at the time of filing the First Action. A determination two years later by another court based on different allegations of imminent danger at different facilities and asserting different underlying claims is not an extraordinary circumstance that would Plaintiff to relief from the Orders denying him permission to proceed as a poor person and the Judgment dismissing the action. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988); *Nemazier v. Baker*, 793 F.3d 58, 63 (2d Cir. 1986)

Accordingly, Plaintiff's Motion for Reconsideration is denied.

## B. SCREENING AMENDED COMPLAINT IN SECOND ACTION

### 1. Introduction

Plaintiff's Amended Complaint in the Second Action (6:16-CV-6105-FPG) is, as were his Complaints in the First Action, a diary or account of a litany of various incidents and claimed constitutional violations that occurred between 2012 and 2015 at Auburn C.F., Southport C.F. and Attica C.F.[4] Many, if not most, of the events and violations alleged are unrelated. If there is one primary claim asserted it is that Defendant Joseph Noeth, First Deputy Superintendent at Attica C.F., denied Plaintiff due process at a Superintendent's Hearing held between August 15 and November 16, 2015 regarding a Misbehavior Report that included events that occurred at the Auburn C.F. on August 1 or 2, 2012. It is alleged that Noeth, among other things, allowed the

---

[4] As noted above, only those events that occurred during Plaintiff's incarceration at the Attica C.F. and Southport C.F. were severed and transferred to this District by the Northern District of New York.

admission of a forged document —an "Evidence Log Stamp"—despite the fact that the document showed the name of C.O. J. Swanson as author, but Swanson had testified at the Hearing that he did not process the alleged contraband.  Plaintiff also alleges that during the Hearing he was denied inmate assistance, denied the right to call witnesses from the Auburn C.F. and the right to introduce documentary evidence, including security camera footage in the Auburn C.F. Holding Area on August 1, 2012 and denied a Use of Force Report.  Plaintiff was found guilty by Noeth and sentenced to 60 months confinement in the Special Housing Unit ("SHU") and 60 months recommended loss of good time.  Second Action, ECF No. 7, ¶ ¶ 1, 33-34, 38-47.  Noeth's Disposition was upheld on administrative review and by the Appellate Division, Third Department in an Article 78 proceeding.  The Appellate Division upheld the determination of guilt but found that the forged document was signed by someone other than its author.  (*Id.,* ¶ 47.)

Prior to severance and transfer, the Amended Complaint included over 35 Defendants and totaled 40 pages.  After severance, it includes 30 Defendants.  These Defendants include, *inter alia*, the Governor and Attorney General of the State of New York, the Commissioner of the New York State Commission on Corrections and the Executive Director of the New York State Division of Human Rights, and both supervisory and non-supervisory officials of DOCCS, including the Acting Commissioner, Anthony Annucci, and numerous correctional officers and employees at the Attica and Southport Correctional Facilities.  Plaintiff seeks, *inter alia*, prospective injunctive relief in the form of medical treatment for the various health issues raised in the Amended Complaint and compensatory and punitive damages.

Under 28 U.S.C. § § 1915(e)(2)(B) and 1915A, the Court must screen the Amended Complaint to determine which claims, if any, should be dismissed because they are: (i) frivolous

or malicious, (ii) fail to state a claim upon which relief can be granted, or (iii) seek monetary relief against defendants who are immune from such relief, and whether Plaintiff should be permitted the opportunity to amend those claims the Court determines should be dismissed based on their failure to state a claim upon which relief can be granted.

### 2. Standard of Review

a. <u>28 U.S.C. § § 1915(e)(2)(B) and 1915A(b)</u>

28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) require the Court to conduct an initial screening of the Amended Complaint.  In evaluating the Amended Complaint, the Court must accept as true all of the factual allegations and must draw all reasonable inferences in Plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).  While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure.  *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).  "Specific facts are not necessary," and the Plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' "  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Based on its evaluation of the Amended Complaint, the Court finds that pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b), several of Plaintiffs' claims must be dismissed with prejudice because they fail to state a claim upon which relief may be granted and several other claims must be dismissed with prejudice unless Plaintiff files a second amended complaint as directed below.  The remaining claims, as set forth below, may proceed to service.

b.  <u>Rule 8 of Federal Rules of Civil Procedure</u>.

Rule 8 of the Federal Rules of Civil Procedure provides in relevant part that a pleading which states a claim for relief "must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). The Rule further provides that "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1). As the Second Circuit has observed:

> The statement should be plain because the principal function of the pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotation marks and citations omitted).  Thus,

> When a complaint does not comply with the requirement that it be short and plain, the court has the power . . . to strike any portions that are redundant or immaterial . . . or to dismiss the complaint.

*Salahuddin*, 861 F.2d at 42.

The Second Circuit has discussed the application of Rule 8's pleading requirements following the United States Supreme Court's decision in *Erickson*, 551 U.S. at 94.  *See Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008).  In *Boykin*, the Second Circuit noted that the Supreme Court "reiterated that '[s]pecific facts are not necessary,' and that the complainant 'need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Id.*, 521 F.3d at 214 (quoting *Erickson*) (internal quotations omitted).  However, in applying the requirements of Rule 8 to complaints which contain too much detail, the Second Circuit has also emphasized that dismissal under Rule 8(a) "'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true

substance, if any, is well disguised,'" *Shomo v. New York*, 374 F. App'x 180, 182 (2d Cir. 2010) (quoting *Salahuddin*, 861 F.2d at 42).

Given, on the one hand, the Court's obligation to enforce the pleading requirements of Rule 8, but on the other hand, "to read[] *pro se* complaints with special solicitude and [to] interpret[] them to raise the strongest [claims] that they *suggest*[,]" *Shomo*, 374 F. App'x at 183 (internal quotation marks and citation omitted), the Court notes that the Rule 8 "violations" in the Amended Complaint herein—*e.g.*, short and plain statement—are not of the type that would allow the Court to dismiss it *in toto* with an opportunity to amend to comply with Rule 8. *See Shomo*, 374 F. App'x at 183 (complaint is neither "unintelligible" nor a "labrynthian prolixity of unrelated and vituperative charges that defied comprehension") (quoting *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972)).

Accordingly, the Court must undertake the demanding task of reviewing each Claim against each of the 30 Defendants and determine whether each claim is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against defendants entitled to immunity from such relief, *see* 28 U.S.C. § § 1915(e)(2)(B) and 1915A; *see also Shomo*, 374 Fed.Appx. at 183 (district court's dismissal on the basis of § 1915(e) was in error, because [it] did not review, in fact, the merits of plaintiff's claims to determine whether they were frivolous under the relevant civil rights statute . . . .");[5] and, if so, whether the claims should be dismissed *sua sponte* or could be cured by amendment.

---

[5]      In *Shomo*, the district court, on 28 U.S.C. § 1915(e) and 195A review, was confronted with a complaint that named over 25 defendants, had 295 separate paragraphs and was 100 pages in length.  The district court noted and addressed the complaint's obvious violations of Rules 8(a) and 10(b), and its other deficiencies, and directed plaintiff to file an amended complaint that, *inter alia* (i) named no more than 20 individuals as defendants, (ii) was no more than 20 pages in length, (iii) had separately numbered short and concise paragraphs, and (iv) that each individually numbered paragraph addressed a particular claim and concisely described the actions of each defendant that plaintiff alleged caused him injury.  *Shomo v. State of New York*, 1:06-CV-0353A, ECF No. 6.  Rather than file an amended complaint, plaintiff filed a

c. Plaintiff's Claims

The Amended Complaint is separated into numerous self-titled sub-parts or sections, including a "Preliminary Statement" and "Statement of Facts" and a number of what the Court construes as "Claims"—e.g., "Unlawful Use of Mental Health to Deflect Official Misconduct," "Denial of Adequate Assistance," "Denial of Reasonable Accommodation," etc.  The Statement of Facts alleges, *inter alia*, what Plaintiff believes was a far-ranging conspiracy within DOCCS to administer an "unlawful discriminatory policy, practice or custom intended to deflect official misconduct of attempting to defraud State and Federal Agencies governing . . . Medicaid, Medicare, etc.  Defendant Joseph Noeth, acting as Hearing Officer, confined Plaintiff <u>illegally</u> to 60 months [SHU], 60 months loss of good time, etc. without providing constitutional and statutory regulatory rights, which hearing was tainted by use of admitted forged document that raised serious constitutional question about the integrity of the chain of custody etc."  ECF No. 7, ¶ 1 (emphasis in original)).

For ease of reference, the Court will review below each of the Claims asserted in the Amended Complaint according to the "titles" set forth by Plaintiff in the Amended Complaint for each Claim.[6]

---

notice of appeal and the Second Circuit held that the complaint was not so deficient as to require it be dismissed without prejudice at that stage in the litigation and that the court erred to the extent it ordered plaintiff to confine his amended complaint to a certain number of pages and defendants.  *Shomo*, 374 F. App'x at 183.  The Second Circuit stated that "the district court will remain free to consider whether each claim in the amended complaint states a claim upon which relief can be granted or is otherwise frivolous."

Thus, the Court must consider each claim in the Amended Complaint separately and determine whether each claim is frivolous or malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against defendants immune from such relief.

[6]     In addition to 42 U.S.C. § 1983, Plaintiff purports to bring his Amended Complaint under 42 U.S.C. § § 1981, 1982 and 1985, 28 U.S.C. § 1350 (Torture Victims Protection Act ("TVPA")), 18 U.S.C. § 2344 (Convention Against Torture ("CAT")), 42 U.S.C. § § 12101-12132 (American with Disabilities Act of 1990 ("ADA")), and 28 U.S.C. § 115.63 (Prison Rape Elimination Act ("PREA")).  To

*i. Policy 3.07 Failure*[7]

On or about August 2, 2012, Plaintiff was transferred to Southport C.F. from the Hospital at SUNY Upstate Medical Center, where he had been taken from Auburn C.F. after what appears to have been the alleged incident or assault that is the basis of the Misbehavior Report and Superintendent's Hearing at the heart of this action. The day prior to the transfer, Plaintiff claims he was passed out in a holding area at Auburn C.F., was transported to the Hospital, and learned that he had been "physically assaulted and was almost murdered." ECF No. 7, ¶¶ 16-20.) Plaintiff claims that upon his arrival at the Southport C.F., Defendants Dr. Canfield and Nurse Pritchard somehow failed to follow Policy 3.07(1)(c)—Preparing Medications for Inmates Leaving the Facility—which required a two day supply of medications to follow an inmate to the transferee facility. Apparently, there was no pharmacy on site and he was cleared for transport to Attica C.F. the next day. He further claims that upon his arrival at Attica C.F. he was placed in the Mental Health Unit because Nurse Pritchard had filed a false Mental Health Referral. He also claims Pritchard answered "no" to certain health-related questions asked on a health care form, including whether Plaintiff had "current health problems, HIV Test, Medication, Vision problem, Hearing problem, Hearing Aids [and] Dental problem." ECF No. 7, ¶¶ 24-28.

These claims against Dr. Canfield and Nurse Pritchard must be dismissed with prejudice for failure to state a claim upon which relief can be granted. Liberally construing these claims as asserting a claim of deliberate indifference under the Eighth Amendment, they must be dismissed because Plaintiff has not alleged, in any way, that the failure to provide him with medication for

---

the extent Plaintiff's Claims state a valid cause of action under any of these statutes other than 42 U.S.C. § 1983 and that these statute give rise to a private right of action, they will be addressed below. Otherwise, it should be assumed that Plaintiff's Claims are construed as claims brought under § 1983 <u>only</u>.

[7]     The Claims set forth in the Amended Complaint prior to this one--"Policy 3.07"--are ones that occurred at the Auburn C.F. and were not severed and transferred to this Court.

what appears to be at most a one or two day period upon his transfer to the Attica C.F., allegedly in violation of a policy of DOCCS, caused him any harm or injury. A delay in providing medical treatment alone does not give rise to a claim of deliberate indifference "unless the delay causes substantial harm." *Evan v. Manos*, 336 F. Supp. 2d 255, 262 (W.D.N.Y. 2004)(citations omitted). Moreover, the violation of a state prison rule or regulation does not give rise to a constitutional claim. *See Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987); s*ee also Concourse Rehabilitation & Nursing Center, Inc. v. DeBuono*, 179 F.3d 38, 43 (2d Cir. 1999) ("As we repeatedly have explained, the failure of a State authority to comply with State regulations cannot alone give rise to a § 1983 cause of action").

Plaintiff also alleges that Nurse Pritchard provided false answers on a medical form with regard to a number of medical conditions. This claim also fails to state an actionable constitutional claim. *Benitez v. Locastro*, No. 9:04-CV-423, 2008 WL 4767439, at *11 (N.D.N.Y. Oct. 29, 2008) (allegation that defendants falsified plaintiff's medical records did not state a valid § 1983 claim).

These claims are also barred by the applicable three year statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989). As the Northern District held, the Complaint was filed at the earliest on October 20, 2015 (Second Action, ECF No. 12, at 14, n. 12). The claims asserted in this Claim accrued, at the latest, on August 2, 2012, when Plaintiff was at the Southport C.F. for one day, and they are therefore untimely. While a court should not dismiss a claim on the basis of the statute of limitations without first providing plaintiff with notice and an opportunity to respond, *see Abbas*, 480 F.3d at 640-41, the Court need not provide notice and

opportunity prior to dismissing this Claim because the claims asserted therein fail to state a claim upon which relief can be granted and are being dismissed on that basis.

Accordingly, the claims against Defendants Dr. Canfield and Nurse Pritchard must be dismissed with prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (An opportunity to replead should be denied where "[t]he problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." (citation omitted)).

### ii.  Unlawful Use of Mental Health to Deflect Official Misconduct

Plaintiff alleges that J. Vasile and K. Lavin, Auburn C.F. Correctional Sergeant and Lieutenant, respectively, acted in concert with J. Nocera, Deputy Inspector General, DOCCS, to cover up the alleged assault that occurred at Auburn C.F. on August 1, 2012 prior to Plaintiff's transfer to Southport C.F., and used Plaintiff's mental health status to have him placed in the Mental Health Unit at the Southport C.F. and Attica C.F. As a result, he was denied medications, eye-glasses and hearing aids in Attica C.F.'s Mental Health Unit until August 7, 2012.[8]  Plaintiff further alleges that at Attica C.F. between August 3 and 7, 2012, Defendants Nurse Bonning, Dr. Rao, Physician Assistant ("PA") Graf and Nurse Practitioner ("NP") Schunk failed to provide him with medications, which contributed to him being taken to the Erie County Medical Center, where he stayed until August 9, 2012.  On August 10, Bonning and Graf discharged him from the Mental Health Unit at Attica C.F. back to SHU, where from August 10-16, 2012, he was subjected to "torture like conditions motivated by racial and religious malicious[ness]" by Defendant Schuessler, Correctional Officer ("CO").  ECF No. 7, ¶¶ 29-31.

Plaintiff's Claim that Defendants failed to provide him with some unspecified medications in the Attica C.F.'s Mental Health Unit for a few days following his transfer there can be construed as a claim of deliberate indifference in violation of the Eighth Amendment, *see*

---

[8] This portion of the Claim, since it arose at Auburn C.F., was not severed and transferred to this District.

*Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.").  However, as pled, this claim fails to state a claim upon which relief can be granted.  Plaintiff does not allege what medications he was denied or was delayed upon his transfer, how the failure or delay was due to some deliberate indifference on the part of Defendants and how said failure or delay caused the hospitalization or even what the nature of the hospitalization was.  Plaintiff's allegations are nothing more than the unsupported assertion that he did not receive some medications for a few days and ended up in the hospital. This is simply insufficient to state an actionable Eighth Amendment deliberate indifference claim under 42 U.S.C. § 1983.  *See Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint is not required to have "'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A claim of inadequate medical care rises to the level of a constitutional violation only where the facts alleged show that defendant was deliberately indifferent to a plaintiff's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  *See also Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992).  "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"  *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)).  The Second Circuit pointed out that

> [medical] conditions ... vary in severity and ... a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case.  Thus, a prisoner with a hang-nail has no constitutional right to treatment, but if prison officials

> deliberately ignore an infected gash, "the failure to provide
> appropriate treatment might well violate the Eighth Amendment."

*Id.* (quoting *Chance*, 143 F.3d at 702).

An isolated failure to provide medical treatment, without more, is generally not actionable unless "the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment." *Gil v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). The Court finds that the allegations set forth in this Claim are silent as to the circumstances surrounding Plaintiff's unspecified medical situation which he claims was not treated with medication for a few days and thus do not suggest any degree of deliberateness on the part of Defendants and therefore Plaintiff has failed to allege an actionable constitutional violation against Nurse Bonning, Dr. Rao, PA Graf, and NP Schunk. This Claim is thereby dismissed without prejudice. Plaintiff may file a second amended complaint to allege facts, if they exist, that would state a claim that Defendants were deliberately indifferent to a serious medical condition.

Similarly, Plaintiff's wholly conclusory allegations that Defendant Schuessler subjected him to "torture like conditions motivated by racial and religious malicious[ness]" fail to state a claim under the either the Eighth Amendment's Cruel and Unusual Punishment Clause or the Fourteenth Amendment's Equal Protection Clause and must be dismissed without prejudice but with leave to amend in order to state an actionable claim.

### iii.  Denial of Adequate Legal Assistance—Inmate Assistant

This Claim is part and parcel of the primary claim in this action that Plaintiff was denied due process at a Superintendent's Hearing held at the Attica C.F. by Defendant Noeth related to the alleged assault that occurred at the Auburn C.F. on August 1, 2012. Plaintiff alleges that on

August 3, 2012, Defendants R. Romesser,[9] the Inmate Assistant for his Hearing, visited his cell and ignored the fact that Plaintiff had no eye glasses or hearing aids but nonetheless wanted Plaintiff to execute a form that acknowledged he had received assistance.  Plaintiff refused to sign the form.  Between August 1 and 15, 2012, Noeth requested a number of extensions of time to commence the Hearing and on November 15, 2012, Noeth planned to hold the Hearing despite Plaintiff not having his eye glasses and hearing aids, and feeling "severely weak" while he was awaiting a Pace Maker.  It appears that the Hearing was extended until November 16, 2012, after Plaintiff had been provided a hearing aid, but during the entire period of time the Hearing had been delayed Noeth had not re-assigned an Inmate Assistant to assist Plaintiff.  ECF No. 7, ¶¶ 32-34.

To the extent this claim is part of the due process claim, it may proceed to service at this time against Romesser and Noeth.  However, to the extent it can be construed as a denial of medical care or a denial of a reasonable accommodation based on the failure to provide Plaintiff with hearing aids and eye glasses, it is dismissed as to these two Defendants.  These two Defendants were not medical providers and there are no allegations that they were in a position to provide Plaintiff with those medical devices.

### iv. Denial of Reasonable Accommodation

Plaintiff alleges that on September 8 and 18, 2012, Defendants Dr. Rao and Nurse Pritchard failed to process a "Request for Reasonable Accommodation"—a hearing aid—and on September 25, 2012, Defendant Dr. Gullo refused to recommend further testing thereby exhibiting deliberate indifference to a serious medical need.  On November 12, 2012, Plaintiff learned that Defendants Annucci and Buther, DOCCS Ombudsman, knew that Walsh, an

---

[9]  It appears that R. Romesser was not listed as a Defendant in the caption of the Amended Complaint and the Clerk of Court will be directed to add him as a Defendant to this action.

audiologist, had denied Plaintiff adequate medical care when he failed to provide correct audiology readings for years and thus Plaintiff had been provided hearing aids for years without the errors being corrected.  ECF No. 7, ¶¶ 35-37.  There is no allegation that there was a problem with the hearing aids *per se*.

The claims against Dr. Rao and Nurse Pritchard, which are construed as deliberate indifference claims under 42 U.S.C. § 1983, arose on September 8 and 12, 2012, more than three years prior to the filing of the Complaint on October 20, 2012, and are thus time-barred under the applicable statute of limitations.  There are no allegations against Rao and Pritchard that would support a continuing violation theory against them.  *See Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) ("To assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in the furtherance of that policy.'") (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).  Plaintiff, however, will be allowed to amend the complaint, if facts exist to support a timely Eighth Amendment claim against Rao and Pritchard based on a continuing violation theory, as well as to state an actionable Eighth Amendment claim against them, which, as addressed below, he fails to allege sufficiently.

Plaintiff appears to claim that on two occasions in September 2012, Dr. Rao and Nurse Pritchard presumably denied him his hearing aids, which somehow affected his appeal to the Superintendent and Buther.  He also alleges that Defendant Gullo did not recommend further testing.  ECF No. 7, ¶¶ 35-36.  These allegations assert, at the most, a delay in receipt of treatment.  In fact, later in the Amended Complaint, Plaintiff appears to allege that he received his hearing aids before the Superintendent's Hearing on November 16, 2012. *See id.*, ¶ 34.

While acknowledging that a hearing loss can be a serious medical condition under the Eighth Amendment, *see Renalls v. Alfredo*, No. 12-CV-5300(KMK), 2015 WL 5730332, at *11 (S.D.N.Y., Sept. 30, 2015) (citing *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 412 (S.D.N.Y. 2006) (holding that "objectively, the ability to hear is a basic human need affecting daily activity and sufficiently serious to warrant treatment by physicians," and noting that the plaintiff's "ability to hear [was] critical not only in terms of enjoyment and good health but also, and perhaps most importantly, in terms of safety and security-particularly so in the controlled environment of a prison"), *reconsideration granted on other grounds*, 452 F.Supp.3d 328 (S.D.N.Y.2006)), Plaintiff's Complaint does not allege, in any way, the extent and nature of his hearing loss and how it was sufficiently serious to state an Eighth Amendment claim. *See Chance*, 143 F.3d at 702. (Courts in this Circuit have considered various factors in determining the existence of a serious medical condition, including: (1) the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (2) "the presence of a medical condition that significantly affects an individual's daily activities"; (3) "the existence of chronic and substantial pain"; and (4) "adverse medical effects or demonstrable physical injury."); *Ferguson v. Cai*, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in [the Second Circuit], they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.") (citing *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006).

Moreover, there are no allegations to establish that Dr. Rao, Nurse Pritchard and Dr. Gullo acted with a sufficiently culpable state of mind to satisfy the subjective prong of an Eighth

Amendment deliberate indifference claim. *See, e.g., Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).

The allegations against Commissioner Annucci and Ombudsman Buther allege even less than the ones against Rao, Pritchard and Gullo and thus fail to state a claim against them under the Eighth Amendment. Plaintiff alleges only that "it was learned" in November 2012, that Annucci and Buther knew that Dr. Walsh—an audiologist and non-party—had denied him adequate medical care and failed to provide correct readings on tests for years. He thus claims that he was provided hearing aids for years without any errors being corrected. In addition to not alleging sufficiently a serious medical condition and that Annucci and Buther acted with a sufficiently culpable state of mind with respect to Walsh's alleged failed to accurately read some audiology tests, Plaintiff also does not allege that Annucci and Buther were personally involved in the alleged failure to correctly read the tests and provide Plaintiff with proper treatment, including hearing aids. *See Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Supervisory officials are generally permitted to rely on the opinions of medical staff concerning the correct course of treatment. *See White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988); *Smiley v. Westby*, 1994 WL 51997, at *8 (S.D.N.Y. 1994) ("[A] warden who receives assurances from his medical staff that an inmate is receiving appropriate care will ordinarily be insulated from § 1983 liability."); *Liscio v. Warren*, 718 F. Supp. 1074, 1082 (D. Conn. 1989) (granting summary judgment to a prisoner administrator who, "justifiably may defer to the medical experts regarding treatment of inmate/patients" when there is no evidence that the administrator was reckless in the supervision of subordinates), *rev'd on other grounds*, 901 F.2d 274 (2d Cir. 1990). Plaintiff thus fails to state an actionable claim against Annucci and Buther and his claims against them are dismissed. While the Court is highly skeptical that Plaintiff can

state an Eighth Amendment claim against them, Plaintiff will be permitted to amend the Complaint, if he so wishes, in order to state an actionable claim against them. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("A pro se complaint 'should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

Accordingly, Plaintiff's claims against Defendants Rao, Pritchard and Gullo asserted in this section of the Amended Complaint fail to state a claim upon which relief can be granted and are barred by the applicable statute of limitations. Plaintiff, however, will be granted leave to amend the Amended Complaint, if he so wishes, in order to set forth sufficient facts, if they exist, to allege an Eighth Amendment claim and to establish that his claims are timely under a continuing violation theory. Plaintiff also will be granted leave to amend the Amended Complaint in order to assert an Eighth Amendment claim against Defendants Annucci and Buther.

> *v. Forged Document [Due Process], Denial of Right to Call Witnesses and Denial of Documentary Evidence*[10]

As noted, Plaintiff's Claim that he was denied due process at the superintendent's hearing conducted by Defendant Noeth is partially based on Noeth's admission of a forged document is the primary claim in this action. Plaintiff alleges that Noeth admitted an evidence log stamp— which is claimed to be the final stage of the "chain of custody" when contraband is placed in the evidence drop box—despite the fact that Correctional Officer whose name appeared on the document, J. Swanson, testified at the hearing that he never possessed the contraband Plaintiff was alleged to have possessed. ECF No. 7, ¶¶ 38-39. Plaintiff also alleges that he was denied

---

[10] This Section incorporates three separate claims/sections of the Amended Complaint (ECF No. 7, ¶¶ 38-47) because they are all part of the same Due Process Claim.

the right to call the Correctional Officers who were present in the Holding Area at the Auburn C.F. on the day of the incident as witnesses, and was denied the right to have access to and admit certain documentary evidence, including security camera footage of the holding area and the use of force report. (*Id.*, ¶ ¶ 40-47).

The Court finds that Plaintiff's Due Process Claim against Noeth may proceed to service.

*vi. Denial of Access to Courts*

Plaintiff alleges that he was denied typing, notary and copying services and out-of-state case law in violation of DOCCS Directive #4833. He does not allege when these denials occurred or who denied him these services. ECF No. 7, ¶ 49. These allegations, separate and apart from the failure to name what Defendants engaged in the alleged conduct, fail to state a claim upon which relief can be granted and must be dismissed with prejudice.

While it is true that under the Constitution a correctional facility must provide an inmate with meaningful access to the courts, *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the mere limitation of access to legal materials, without more, does not state a constitutional claim, as "'the Constitution requires no more than reasonable access to the courts.'" *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (quoting *Pickett v. Schaefer*, 503 F. Supp. 27, 28 (S.D.N.Y. 1980)). Moreover, in order to state a constitutional claim, a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Thus, Plaintiff must show that he has suffered an actual injury traceable to the challenged conduct of prison officials. A plaintiff has not shown actual injury unless he shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis*, 518 U.S. at 351-52. Taking Plaintiff's claim as true, he nevertheless "offers no

facts [whatsoever] to explain how the denial of typing, notary and copying services, and the denial of access to out-of-state case law prejudiced [his] ability to seek redress from the judicial system." *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995). Accordingly, Plaintiff's Claim that he has been denied access to the courts is hereby dismissed with prejudice.

### vii. Denial of Confidentiality—Legal Mail

Plaintiff alleges that his legal mail was often opened outside his presence and that his mail was often given to the wrong inmate "causing actual and real damages to pending court action." He also alleges that Defendant Cross, Mail Room Supervisor, Attica C.F., and her staff forwarded confidential medical records received between 2011 and 2013 to unauthorized personnel and thus violated state confidentiality laws. ECF No. 7, ¶¶ 50. Plaintiff's allegations fail to state a claim under either the First or Fourteenth Amendments and must be dismissed. However, Plaintiff will be provided an opportunity to file an amended complaint to set forth an actionable claim of interference with his legal mail.

Interference with legal mail may constitute a violation of the right to free speech and the right of access to the courts as guaranteed by the First and Fourteenth Amendments. *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003); *Monsky v. Moraghan,* 127 F.3d 243, 246–47 (2d Cir.1997) (citing *Lewis v. Casey,* 518 U.S. 343 (1996)). To establish a violation of the right to free speech, an inmate must demonstrate that prison officials "regularly and unjustifiably interfered with the . . . legal mail." *Cancel v. Goord,* No. 00 CIV 2042 LMM, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001) (citing *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir. 1986)). "While a prisoner has a right to be present when his legal mail is opened, *Wolff v. McDonnell*, 418 U.S. 539, 574-76 (1974), an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citing *Morgan v.*

*Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975); *Washington*, 782 F.2d at 1139.) "Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Id.* (quoting *Cancel*, 2001 WL 303713 at *6).

In *Washington*, the Second Circuit determined that as few as two incidents of mail tampering could constitute an actionable violation "(1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351. "Following *Washington*, district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face." *Id.* Where incidents of tampering are few, specific allegations of invidious intent or of actual harm are generally required. *See Smith v. City of New York*, No. 14CV443-LTS-KNF, 2015 WL 1433321, at *5 (S.D.N.Y. Mar. 30, 2015) (citing *Goord*, 320 F.3d at 351).

Plaintiff's claims are wholly conclusory and do not assert any specific allegations of invidious intent or of actual harm. While the Amended Complaint alleges "an ongoing practice" of opening of legal mail without him being present, a plaintiff must allege more "than an unadorned, the defendant-unlawfully-harmed-me accusation" in order to state a claim that could survive dismissal." *Iqbal*, 556 U.S. at 678.

To establish a claim of denial of access to the courts, a plaintiff must show: (1) that the defendant acted deliberately and maliciously; and (2) that the plaintiff suffered actual injury in pursuing a legal claim. *Davis,* 320 F.3d at 351. Again, while Plaintiff alleges in conclusory terms only that interference with his legal mail "caus[ed] actual and real damages to pending

court actions," he does not allege any facts in support of his claims that Defendant Cross acted deliberately and maliciously and that he suffered an actual injury.

Accordingly, Plaintiff's interference with mail claims are dismissed, but with leave to amend in order to state a free speech and/or a denial of access to courts claim.

### (viii.) Denial of Adequate Records—Right to Review Records

Plaintiff alleges that Defendant Donahue, SHU Counselor, Attica C.F., refused to allow him to review his inmate records in order to correct false information placed therein by DOCCS, which effect his programming. This claim appears to be based on an allegation that Defendants Annucci, Boll and Fonda continue to ignore Pennsylvania's juvenile laws that prohibit the use of information contained in his juvenile records related to a 1970 "discharge" of a criminal escape attempt to justify his status as an "escape risk" prior to the August 1, 2012 incident. Plaintiff appears to claim that his status as an escape risk was used in 1996 to justify an administrative segregation confinement, as was a 1995 escape charge that was ordered dismissed in 1997 and sealed in 2000. Despite an Appellate Division decision in 1999 ordering the dismissal of a kidnap in second degree conviction, Annucci and Boll continue to display the charge or conviction on DOCCS's website. Apparently, in May 2015, after the Clerk of the New York Supreme (or County) Court issued an Amended Commitment Order, Donahue denied Plaintiff's request to review his inmate records to verify DOCCS's compliance with the various courts' decisions over the years in violation of "due process." On January 28, 2015, Plaintiff sought to learn who was on his "Separation List" in order to challenge its accuracy but some unspecified "Defendants" refused his request and used it to send him "as far north away from his family . . . ." ECF No. 7, ¶¶ 51-54.

This Claim appears to allege some undefined due process violation based on Donahue's refusal to allow Plaintiff to review his records to check their accuracy and Annucci, Boll and Fonda's reliance on "false" information to classify him as an escape risk, which has had a negative impact of some type on his programming in prison.  Plaintiff refers to this "right" as a "denial of adequate records (right to review records)."

In *Paine v. Baker*, 595 F.2d 197, 201 (4ᵗʰ Cir. 1979), the Fourth Circuit held that "in certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree."  But in *Labounty v. Coombe*, 208 F.3d 203, 2000 WL 287726, at *1 (2d Cir. 2000), the Second Circuit, in a Summary Order, noted that this Circuit has not followed *Paine* "in recognizing that a prisoner has a constitutional right to have incorrect information relied upon in a parole hearing expunged from his or her file.  In affirming the district court's decision in this case, we do not establish such a right. . . . " *Id.; see, e.g., Russo v. Duprey*, No. 9:12-CV-1815 (LEK/ATB), 2014 WL 948851, at *2 (N.D.N.Y., Mar. 1, 2014) (prisoner has no constitutional right to have a Pre-Sentence Report that he claimed contained false information removed from his file.); *Watts v. Pataki,* No. 9:08-CV-92, 2010 WL 2925725, at *3 (N.D.N.Y. Jul 20, 2010) (noting that the Second Circuit has not recognized the right of a prisoner to have incorrect information expunged from his prison file).

But even if Plaintiff had a limited constitutional right to have incorrect information expunged from his file, his claim would nonetheless fail because courts that have recognized the right "have stated there must be a probability that the false information will be relied on for decisions about issues such as parole or good time credits, not merely decisions about internal matters such a[s] work assignments." *Lowrance*, 862 F. Supp. at 1119 (citing *Paine*, 595 F.2d at

202.    Plaintiff has not alleged that the false information has been relied on in some constitutionally significant magnitude, such as to deny him parole or good time credits.  At most, he alleges that it has been used to deny him various prison programs because he has been classified as an escape risk or to transfer him to another prison.  A prisoner in New York has no due process right to prison programming or not to be transferred to another prison.  *See Taylor v. Levesque*, 246 F. App'x.772, (2d Cir. 2007) ("It is well settled that prisoners generally do not have a protected liberty interest in classifications that impact their eligibility to participate in rehabilitative programs. . . [P]risoners generally have no due process right to challenge their assignment to a particular facility, and therefore [have] no due process rights to challenge a classification that might thwart [prisoner's] desire to transfer to another facility.")

Accordingly, this Claim must be dismissed with prejudice.

### ix.  Denial of Medical Care

Plaintiff alleges that on February 19, 2015, Defendants Nurse Bonning, PA Graf and Dr. Rao, acting in concert with Defendants Dr. Koenigsmann, Chief Medical Officer, DOCCS, and Dr. Bogarak, Regional Medical Director, as other medical personnel had in the past, denied him Hepatitis C treatment that had been approved back in 2004 or 2007 following a diagnosis in 2002.  He claims the denial of such treatment was in retaliation for a complaint he had filed against the former DOCCS Medical Services Director Lester Wright in 2010.  Defendants denied him treatment claiming that treatment was not necessary until his condition worsened.  ECF No. 7, ¶ 55.  Plaintiff's Claim, construed as both an Eighth Amendment deliberate indifference claim and a First Amendment retaliation claim, is stated in conclusory terms only and fails to state a claim upon which relief can be granted and will be dismissed without prejudice with leave to file

an amended complaint in order to state actionable claims under either or both the First and Eighth Amendments.

While a diagnosis of Hepatitis C is a serious medical need or risk, Plaintiff's conclusory allegations that Bonning, Graf and Rao, acting in concert with supervisory officials, Koenigsmann and Bogarak, denied him treatment in retaliation for a complaint filed five years earlier against a former Medical Director fails to allege factually that these Defendants were deliberately indifferent to his diagnosis. An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. Plaintiff's conclusory allegations, without more, that Defendants retaliated against him and denied him treatment are insufficient to allege a claim of deliberate indifference. *See Iqbal*, 556 U.S. at 678 (Although the allegations contained in a complaint are assumed to be true, this tenet "is inapplicable to legal conclusions." A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

Similarly, Plaintiff's retaliation claim cannot survive review under 28 U.S.C. § § 1915(e)(2)(B) and 1915A. In order to state a retaliation claim, a plaintiff must allege (1) protected speech or conduct, (2) adverse action by the defendant, and (3) a causal connection between the two. *See Davis*, 320 F.3d at 352. A prisoner alleging retaliation must show that the protected conduct was "a substantial or motivating factor" behind the alleged retaliatory conduct. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the

alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995).

Because claims of retaliation are easily fabricated, courts must "examine prisoners' claims of retaliation with skepticism and particular care," *Colon*, 58 F.3d at 872, and will require "detailed fact pleading . . . to withstand a motion to dismiss." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) (quoting *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981)).

Plaintiff's only allegations are that he filed a complaint in 2010 against a former Chief Medical Director and five years later medical personnel at the Attica C.F. and two supervisory medical officials denied him medical treatment for his Hepatitis C.  These allegations are wholly conclusory and do not support a claim of retaliation.

Accordingly, Plaintiff's Claim that he was denied Hepatitis C treatment in retaliation for a complaint he filed five years earlier fails to state a claim of either deliberate indifference or retaliation and will be dismissed without prejudice and with leave to file an amended complaint to allege detailed facts, if they exist, to support an actionable claim.

>                     *x.  Denial of PaceMaker Follow-up*

On August 22, 2012, Plaintiff was discharged from the ECMC hospital with instructions that he obtain follow-up for his pace maker in three months, but an outside trip to the hospital did not occur until April 2, 2015, when the pace maker malfunctioned.  ECF No. 7, ¶ 56.  Plaintiff does not identify any Defendant who failed to schedule a follow up but, even if he had, the failure to schedule a follow-up visit does not state a claim of deliberate indifference in violation of the Eighth Amendment.  At most, it would allege a claim of negligence, which does not rise to the level of deliberate indifference.  *See, e.g.*, *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976)

Accordingly, Plaintiff's Eighth Amendment claim related to the failure to schedule a follow-up visit is dismissed with prejudice.

### xi.  Denial of Urology Appointment

Plaintiff alleges that on July 20, 2012, he was discharged from SUNY Upstate Medical Center Hospital with instructions to follow-up with a urologist due to a bladder obstruction but Dr. Koor (who is not part of the claims severed and transferred here), and Defendants Drs. Canfield (Southport C.F.), Rao and Lasheski (Attica C.F.) ignored the instruction and that PA Graf and NP Schunk refused to treat this medical issue.  ECF No. 7, ¶ 57.  These allegations fail to allege both that Plaintiff suffered from a serious medical need, *see, e.g.*, *Chance*, 143 F.3d at 702, and that the Defendants were deliberately indifferent to said need, *see, e.g., Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind, equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  Accordingly, Plaintiff fails to state an Eighth Amendment claim of deliberate indifference against these Defendants.

Plaintiff alleges only that the Doctors at Southport C.F. and Attica C.F. did not follow-up on the Hospital's instructions to have him seen by an urologist and that Defendants Graf and Schunk did not treat the bladder obstruction.  This is insufficient to state an actionable claim. Additionally, Plaintiff was transferred to Attica C.F. from Southport C.F. on August 3, 2012, and therefore any claim that Dr. Canfield failed to follow the Hospital's instructions is barred by the applicable three year statute of limitations.  Moreover, Plaintiff does not allege when Drs. Rao and Lasheski failed to have him treated by a Urologist nor when Graf and Schunk refused to treat

him or how they refused to treat him and, even assuming the alleged failure to treat Plaintiff occurred within the three year statute of limitations period, the Claim, as noted, fails to state a claim upon which relief can be granted and must be dismissed.  While the Court will generally provide a *pro se* plaintiff with leave to re-plead, the court need not grant leave to amend where an amendment would be "futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The Court finds that leave to replead this Claim would be futile, and it will therefore be dismissed with prejudice.

### xii.  Denial of Orthopedic Appointment

Plaintiff again alleges that he was denied medical treatment of some kind in 2015 at Attica C.F.  This Claim alleges that Dr. Lasheski and NP Schunk did not follow-up on a "re-injured" ankle that he had fractured back in 2007, and had been re-injured at some unspecified time by the use of leg shackles.  ECF No. 7, ¶ 58.  This claim is also nothing more than a conclusory allegation of a denial of medical care.  Plaintiff alleges only that he "re-injured" his ankle.  He does not allege, in any way, "'a condition of urgency' that may result in 'degeneration' or 'extreme pain[,]'" *Chance*, 43 F.3d at 702, nor that Dr. Lasheski and NP Schunk exhibited a culpable state of mind sufficient to meet the subjective prong of a deliberate indifference claim under the Eighth Amendment.  *See Hathaway*, 37 F.3d at 66.

Plaintiff's allegations of denial of medical care for a re-injured ankle and other medical issues are little more than a series of unrelated and unsupported allegations that do not state a claim upon which relief can be granted and must be dismissed.  As noted, in order to allege a claim sufficient to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  A claim will have "facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   The Amended Complaint fails to allege a claim of deliberate indifference to a serious medical need in relation to Plaintiff's ankle and must be dismissed with prejudice.   The Court finds that leave to amend this Claim would be futile.   *Ellis*, 336 F.3d at 127 (citation omitted).

### xiii.  Cruel and Unusual Conditions

This Claim is little more than a bullet point listing of unsupported conclusory allegations of various unconstitutional conditions of confinement that Plaintiff claims he was exposed to at Attica C.F. since his transfer there on August 3, 2012.   The list of conditions are: subjected to mentally ill inmates, subjected to subzero weather and cold showers, denial of access to programs of any kind, subjected to harassing cell searches, subjected to sexual abuse by Defendant Schussler, subjected to repeat threats against his well-being, denial of mail from his family and denials of meals, showers and recreation.   ECF No. 7, ¶ 59.   Plaintiff also claims that he has been denied recreation, phone calls, "etc." since 2012, and that these violations were allowed to occur despite complaints and tours of his Housing Unit by Defendants Annucci, Bellnier, DOCCS Deputy Commissioner of Facility Operations, Fonda, Mastrucello, DOCCS DCFA, McKoy, DOCCS Deputy Commissioner of Programs, and Venettozzi, DOCCS Acting SHU Director.   *Id.*, ¶ 60.

All the violations occurred under the "watchful eye" of Donahue, SHU Counselor, who related Plaintiff's complaints to him to other staff members.   On May 27, 2015, Defendant Schuessler made a sexual comment which Plaintiff reported to Donahue who then relayed the complaint to Schuessler who retaliated against Plaintiff by filing a false misbehavior report against him.   *Id.*, ¶ 61.   Plaintiff concludes this claim by stating that the New York Correctional

Association's report of November 24, 2014, detailed "all these sort of clear violations" and that Defendants Annucci, Boll, DOCCS Counsel, McKoy, Bellnier, Mastrucello, Fonda and Venettozzi "made no effort to correct [them thereby] showing [d]eliberate [i]ndifference" to his rights. *Id.*, ¶ 62.

The bullet point listing of various unconstitutional conditions that Plaintiff alleges he was exposed to at Attica C.F. fails to state a claim upon which relief can be granted. Simply listing in wholly conclusory terms a number of unconstitutional conditions that Plaintiff claims he was subjected to at Attica C.F. without any facts supporting said claims is nothing more than what the Supreme Court described in *Iqbal* as "an unadorned, the defendant-unlawfully-harmed-me accusation" that fails to set forth a claim that could survive dismissal. *Iqbal*, 556 U.S. at 678. Therefore, the unconstitutional conditions of confinement claims listed in the Complaint must be dismissed on the basis that as pled they each fail to state a claim upon which relief can be granted. Plaintiff however will be provided the opportunity to file an amended complaint with respect to these claims in order to state actionable conditions of confinement claims, if facts exist to support such claims. Plaintiff is advised that he may not simply list a number of conditions he claims were unconstitutional, but rather, must allege facts, if they exist, to support his allegations that certain conditions violate his rights under the Eighth Amendment.

In order to state an Eighth Amendment Cruel and Unusual Punishment claim, a plaintiff must allege that: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991). Therefore, if Plaintiff decides to file an amended complaint, he must set forth facts sufficient to meet these standards.

Plaintiff's allegation that Schuessler retaliated against him by filing a false misbehavior report against him after it had been reported to Schuessler that Plaintiff had complained about a sexually abusive comment made by Schuessler may, at this stage in the litigation, proceed to service against Schuessler only. [11]

### xiv. Obstruction of Grievances

This Claim, like many others, is confusing.  Plaintiff alleges that Defendant Chisolm, Supervisor, Inmate Grievance Resolution Committee ("IGRC"), and Romesser, Acting Supervisor, IGRC, who is not listed as a Defendant herein, have been "misinformed" by Annucci and Boll that the Prisoner Litigation Reform Act of 1996, as amended, 42 U.S.C. § 1997e(a)-(b), which reads, in part, "Failure of State to Adopt or Adhere to Administrative Grievance Procedure, "*id.*, 1997e(b), "did not include obstruction of one's Grievance Procedure's [sic]." Plaintiff then lists a number of Grievances that presumably had been obstructed by Chisolm and Romesser and he claims that it is "an on-going unlawful discriminatory practice that is encouraged by systematic tacit approved retaliation prompting" the filing of a number of other grievances that are listed in the Amended Complaint.  ECF No. 7, ¶¶ 63-65.

Construing this claim liberally, the Court finds that it alleges, at most, a First Amendment violation based on the obstruction of his grievances.  This Claim, however, fails to state a First Amendment violation and must be dismissed.

As summarized in *Harris v. Westchester County Department of Corrections*, No. 06 Civ. 2011 (RJS), 2008 WL 953616, at *5 (S.D.N.Y., Apr. 3, 2008):

---

[11]     *See Verela v. Demmon*, 491 F. Supp. 2d 442, 452 n.2 (N.D.N.Y. 2007) ("The Court notes that some case law indicates that a prisoner's oral complaints to prison guards may provide the basis for a retaliation claim under § 1983.")

> The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances.  However, inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do not give rise to a cognizable § 1983 claim. Rather, in the event that prison officials ignore a grievance that raises constitutional claims, the proper avenue to seek relief is … directly petitioning the government for redress of his claims.

*Id.* (internal citations, quotations, and alterations omitted.)    Accordingly, the Court finds that to the extent this claim alleges an obstruction of Plaintiff's grievances, it fails to state a claim upon which relief can be granted and must be dismissed with prejudice.

> ### xv.  Imminent Danger of Serious Physical Injury/ No Reprisal Shall be Taken Against Inmates/Adequate Sanitary and Other Conditions Required for Health of the Inmates Shall be Maintained

These remaining self-titled sections of the Amended Complaint, ECF No. 7, ¶¶ 65-83, do not set forth separate claims for relief or causes of action, but rather set forth a diatribe of Plaintiff's displeasure with New York Correctional Facilities, DOCCS's supervisory officials, and with other State officials.  Plaintiff muses that they allowed Attica C.F. and other Facilities to operate as a criminal enterprise and have allowed the "systematic denial of every right[] afforded to every citizen[] that survived a conviction." ECF No. 7, ¶¶ 67-69.  Other general allegations in these sections include that Plaintiff was forced to shower with cold water in subzero temperatures, denied hot meals and nutritious food, which contains 90% soy byproducts, and cell cleaning supplies, all in violation of 9 NYCRR § 7005.1, which requires that all "local" correctional facilities provide "reasonable standards of personal hygiene.

Plaintiff then lists of a number of statutes that he claims this pattern of abuse violate— Torture Victim Protection Act, 28 U.S.C. § 1350; Convention Against Torture, 18 U.S.C. § 2340A; Appropriate Remedies with respect to Prison Conditions, 18 U.S.C. § 3626; Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.*; and the Prisoner Rape Elimination Act,

42 U.S.C. § 15601 *et seq.*  ECF No. 7, ¶ 80.  Even assuming that Plaintiff intended to allege separate causes of action under each of these statutes, and that some or all the statutes listed create private rights of action[12] and apply to the acts or failures to act alleged in the Amended Complaint, Plaintiff's general and conclusory allegations do not set forth actionable claims under any of these statutes and must therefore be dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Reconsideration in 1:13-CV-0559-FPG (First Action) is denied, and the following claims in 6:16-CV-6105-FPG (Second Action) are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e):[13] (i) Policy 3.07 Failures (ECF No. 7, ¶¶ 22-28; (vi.) Access to Courts, (*id.*, ¶ 49); (viii.) Denial of Adequate Records (*id.*, ¶¶ 51-54); (x.) Denial of Follow-up Care for Pace Maker (*id.*, ¶ 56); (xi.) Denial of Urological Appointment (*id.*, ¶ 57); (xii.) Denial of Orthopedic Appointment (*id.*, ¶ 58); Obstruction of Grievances (*id.*, ¶¶ 63-64); and (xv.) Imminent Danger of Serious Physical Injury/No Reprisal Shall be Taken Against Inmates/Adequate Sanitary and Other Conditions Required for Health of the Inmates Shall be Maintained (*id.*, ¶¶ 65-83). The following claims are dismissed without prejudice with leave to file a second amended complaint, if Plaintiff wishes, in order to address those claims that are barred by the statute of limitations and/or fail to state a claim a claim upon which relief can be granted: (ii.) Unlawful Use of Mental Health Status, Denial of Medication and Torture-like conditions (ECF No. 7, ¶¶ 29-31); (iv.) Denial of Reasonable Accommodation (*id.,* ¶¶ 35-37); (vii.) Denial of Confidentiality in Legal Mail (*id.*, ¶ 50); (ix.) Denial of Medical Care--Hep C (*id.,* ¶ 55); and (xiii.) Cruel and Unusual Conditions (*id.*, ¶¶ 59-62).

---

[12]    *See, e.g., McCloud v. Prack*, 55 F.Supp.3d 478, 482 n.2 (Every court to address issue has determined that Prison Rape Elimination Act does not create a private right of action).

[13]    For consistency and ease of reference, the section names and numbers are the same section names and numbers used in the body of the Order.

In addition, the following Claims may proceed to service at the earlier of (1) the time Plaintiff files a second amended complaint as directed and the second amended complaint is screened pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A, or (2) at the time Plaintiff's date to file a second amended complaint passes without a second amended complaint being filed: (iii.) Denial of Adequate Assistance-Inmate Assistance (ECF No. 7, ¶¶ 32-34); (v.) Forged Document [Due Process], Denial of Right to Call Witnesses and Denial of Documentary Evidence (*id.*, ¶¶ 38-48); and (xiii.) Cruel and Unusual Conditions--retaliation claim against Schussler <u>only</u> (*id.*, ¶¶ 59-62).

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action.  It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Therefore, Plaintiff's Second Amended Complaint, if he chooses to file one, must include all of the allegations against each of the Defendants and regarding each of the claims allowed to proceed to service at this time and those claims that he has been granted the opportunity to replead, so that the Second Amended Complaint may stand alone as the sole complaint in this action which the Defendants could then answer.

Plaintiff is forewarned that if he fails to file a second amended complaint as directed, the following claims will then be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e): (ii.) Unlawful Use of Mental Health Status, Denial of Medication and Torture-like conditions (ECF No. 7, ¶¶ 29-31); (iv.) Denial of Reasonable Accommodation (*id.,* ¶¶ 35-37); (vii.) Denial of Confidentiality in Legal Mail (*id.*, ¶ 50); (ix.) Denial of Medical Care--Hep C (*id.*, ¶ 55); and (xiii.) Cruel and Unusual Conditions (*id.*, ¶¶ 59-62), and service will be made of the following Claims *only*: (iii.) Denial of Adequate Assistance-Inmate Assistance (Amended Complaint, ¶¶

32-34); (v.) Forged Document [Due Process], Denial of Right to Call Witnesses and Denial of Documentary Evidence (*id.*, ¶¶ 38-48); and (xiii.) Cruel and Unusual Conditions—retaliation claim against CO Schussler *only* (*id.*, ¶¶ 59-62).

### ORDER

IT HEREBY IS ORDERED, that the Clerk of Court is directed to docket the Motion for Reconsideration (6:16-CV-6105-FPG, ECF No. 14) in 1:13-CV-0559-FPG, and that the Motion for Reconsideration is DENIED;

FURTHER, that the following Claims in 6:16-CV-6105-FPG (Second Action) are dismissed with prejudice: (i) Policy 3.07 Failures (ECF No. 7, ¶¶ 22-28; (vi.) Access to Courts, (*id.*, ¶ 49); (viii.) Denial of Adequate Records (*id.*, 51-54); (x.) Denial of Follow-up Care for Pace Maker (*id.*, ¶ 56); (xi.) Denial of Urological Appointment (*id.*, ¶ 57); (xii.) Denial of Orthopedic Appointment (*id.*, 58); Obstruction of Grievances (*id.*, ¶¶ 63-64); and (xv.) Imminent Danger of Serious Physical Injury/No Reprisal Shall be Taken Against Inmates/Adequate Sanitary and Other Conditions Required for Health of the Inmates Shall be Maintained (*id.*,¶¶ 65-83); and the Clerk of Court is directed to terminate defendants William Canfield, S. Lasheski, J. Chisalon (Chisholm), Governor Andrew Cuomo (to the extent he is identified as a defendant in the body of the Amended Complaint), Eric Schneiderman, Thomas Bellein (Beilein), Helen Foster, and Jane Doe, PL-ACF, as parties to this action;

FURTHER, that Plaintiff is granted leave to file a second amended complaint regarding the following Claims *only* as directed above[14] by **November 4, 2016**, in order to replead those

---

[14] Plaintiff is reminded that he must also include in this Second Amended Complaint those Claims that the Court has found may proceed at this time without amendment: (iii.) Denial of Adequate Assistance-Inmate Assistance (Amended Complaint, ¶ 32-34); (v.) Forged Document [Due Process], Denial of Right to Call Witnesses and Denial of Documentary Evidence (*id.*, ¶ 38-48); and (xiii.) Cruel and Unusual Conditions-retaliation claim against Schussler only (*id.*, ¶ 59-62). Because the second amended complaint will become the sole complaint in the action, it is the only complaint which will be

Claims identified above that are either or both barred the statute of limitations and fail to state a claim upon which relief can be granted: (ii.) Unlawful Use of Mental Health Status, Denial of Medication and Torture-like conditions (ECF No. 7, ¶¶ 29-31); (iv.) Denial of Reasonable Accommodation (*id.,* ¶¶ 35-37); (vii.) Denial of Confidentiality in Legal Mail (*id.*, ¶ 50); (ix.) Denial of Medical Care--Hep C (*id.,* ¶ 55); and (xiii.) Cruel and Unusual Conditions (*id.*, ¶¶ 59-62);

FURTHER, that the Clerk of Court is directed to send to Plaintiff with this Order a copy of the Amended Complaint, a blank § 1983 complaint form that Plaintiff may use for a second amended complaint, and the instructions for preparing an amended complaint;

FURTHER, that in the event Plaintiff fails to file a second amended complaint as directed above by **November 4, 2016**, the following claims will be dismissed with prejudice and without further order of the Court: (ii.) Unlawful Use of Mental Health Status, Denial of Medication and Torture-like conditions (ECF No. 7, ¶¶ 29-31); (iv.) Denial of Reasonable Accommodation (*id.,* ¶¶ 35-37); (vii.) Denial of Confidentiality in Legal Mail (*id.*, ¶ 50); (ix.) Denial of Medical Care--Hep C (*id.*, ¶ 55); and (xiii.) Cruel and Unusual Conditions (*id.*, ¶ 59-62) and the Clerk of the Court shall terminate Defendants  D. Pritchard, Anthony Annucci, Maureen Boll, Vernon Fonda, J. Donahue, James Rao, Deborah Graf, Alicia Schunk, Jeff McKoy, Daniel Mastrucello, Carl Koenigsmann, Donald Venettozzi, Debra Bonning, Joseph Gullo, Lucy Buther, J. Cross, Peter Bogarak, and Joseph Bellnier as parties to this action;

FURTHER, that in the event Plaintiff fails to file a second amended complaint as directed above by **November 4, 2016,** the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the Summons, Amended Complaint (ECF No. 7), and this Order upon

---

served on the parties.  Failure to include these claims in it means that they will not be preserved for service on the Defendants.

Defendants Joseph Noeth, First Deputy Superintendent, Attica Correctional Facility, R. Roemesser, Inmate Assistant, Attica Correctional Facility, and Eric Schuessler, Correctional Officer, Attica Correctional Facility, without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor,[15] regarding the following claims: (iii.) Denial of Adequate Assistance-Inmate Assistance (Amended Complaint, ¶¶ 32-34); (v.) Forged Document [Due Process], Denial of Right to Call Witnesses and Denial of Documentary Evidence (*id.*, ¶¶ 38-48); and (xiii.) Cruel and Unusual Conditions-retaliation claim against Schussler *only* (*id.*, ¶¶ 59-62);

FURTHER, that the Clerk of Court is directed to amend the Caption of this action to add as a Defendant, R. Roemesser, Inmate Assistant, Attica Correctional Facility;

FURTHER, the Clerk of the Court is directed to forward a copy of this Order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office <Michael.Russo@ag.ny.gov>; and

FURTHER, that, pursuant to 42 U.S.C. § 1997e(g), the Defendants are directed to Answer the Amended Complaint upon service.

IT IS SO ORDERED.

Dated:     September 30, 2016
          Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[15]     Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, *see* Fed. R. Civ. P. 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the Summons and Complaint by mail pursuant to N.Y.C.P.L.R. § 312-a.