PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

REGINALD GHAFFAAR MCFADDEN,

          Plaintiff,

    -v-                                 16-CV-06105 FPG

ANTHONY ANNUCCI, JR., et al.,             DECISION AND ORDER

          Defendants.

———————————————————————

      Presently before the Court are *pro se* Plaintiff Reginald Ghaffaar McFadden's ("Plaintiff")

Motions (1) to Amend and File the Fourth Amended Complaint, ECF No. 80,[1] (2) for

Miscellaneous Relief, ECF No. 85, (3) to Substitute Parties and add a Supplemental Pleading, ECF

No. 90, and (4) to Compel Defendants and/or Their Counsel to Provide Addresses at which certain

Defendants can be served, ECF No. 98.   Defendants filed an Attorney Declaration and

Memorandum of Law in opposition to the Motions to file the FAC and substitute parties, ECF No.

94 ("McKay Dec.") and 94-1 ("Defendants MOL"), and Plaintiff filed two replies in support of

his Motions, ECF Nos. 95, 96.   For the following reasons, the Motions to Amend, ECF No. 80,

Compel Addresses, ECF No. 98, and for Miscellaneous Relief, ECF No. 85, are GRANTED IN

PART and DENIED IN PART, and the Motion to Substitute Parties and add a Supplemental

Pleading, ECF No. 90, is DENIED.

---

[1] Plaintiff filed the "Fourth" Amended Complaint ("FAC") prior to filing the Motion to Amend.  ECF No. 71.

**DISCUSSION**

I.      **Procedural Background**

        This case has a long and complicated procedural history and is summarized herein to the

extent necessary for the Motions presently before the Court.  Plaintiff, a prisoner in the custody of

the New York State Department of Corrections and Community Supervision ("DOCCS") and

currently incarcerated at the Attica Correctional Facility ("Attica"), first filed this action in the

United States District Court for the Northern District of New York seeking relief under 42 U.S.C.

§ 1983 and the Americans with Disabilities Act ("ADA").  ECF No. 1.  Plaintiff alleged, among

other things, that prison officials at Attica denied him Hepatitis-C ("Hep-C") treatment.  He then

filed an Amended Complaint (the "First Amended Complaint") that included events that occurred

at Auburn and Southport Correctional Facilities ("Auburn" and "Southport," respectively) and

asserted claims of retaliation and the denial of "essential heart medication" upon his transfer to

Southport.  ECF No. 7 at 11.  The Northern District of New York made a preliminary finding that

Plaintiff had satisfied the "imminent danger of serious physical injury" exception to the "three

strikes" rule, 28 U.S.C. § 1915(g), and granted Plaintiff permission to proceed *in forma pauperis*

("IFP").  It then severed the claims based on events that occurred at Attica and Southport and

transferred them to this District.  ECF No. 12 at 10-13.

        This Court screened the First Amended Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and

1915, ECF No. 17, and dismissed several claims with prejudice, granted Plaintiff leave to amend

several claims and found that other claims could proceed to service upon the filing and screening

of a second amended complaint.  ECF No. 17.  Plaintiff later filed a Second and Third Amended

Complaint ("TAC"), ECF Nos. 18, 29.

The TAC—the current operative pleading—consists of 57 pages and over 140 separate paragraphs.  ECF No. 29.  It asserts constitutional violations dating back to 2011 and sets forth allegations related to or raised in over 150 grievances filed between 2012 and the original filing of this action (2015).  ECF No. 29.  This Court screened the TAC and dismissed with prejudice the claims that Plaintiff had previously been granted leave to amend[2] and directed service of the Summons and TAC against Defendants Deputy Superintendent Joseph Noeth, Inmate Assistant R. Roemesser, and Correctional Officer ("CO") Eric Schuessler, regarding only two claims: retaliation (against Schuessler) and a violation of procedural due process in relation to a disciplinary hearing (against Noeth and Roemesser).  ECF No. 40 at 3-11.

After service of the TAC, these Defendants filed a Motion to Revoke Plaintiff's IFP Status and Dismiss the TAC.  ECF No. 48.  The Court granted Defendants' Motion to Revoke Plaintiff's IFP status on the basis that Plaintiff did not sufficiently allege imminent danger of serious physical injury, conditionally dismissed the TAC if Plaintiff did not pay the filing and administrative fees, and provided Plaintiff 30 days to pay these fees.  ECF No. 57.  Plaintiff filed a Notice of Appeal and the United States Court of Appeals for the Second Circuit vacated the Court's Order revoking Plaintiff's IFP status.  The Second Circuit also vacated and remanded the Court's prior *sua sponte* dismissals, *see* 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A, of the following four claims: (1) Eighth Amendment claim that Defendants did not provide adequate medical treatment for Plaintiff's Hepatitis C; (2) Eighth Amendment and ADA claims that Defendants failed to provide Plaintiff hearing aids; (3) Eighth Amendment conditions of confinement claim; and (4) First Amendment interference with mail claim.  ECF No. 61.

---

[2] The Court dismissed the following claims finding that they failed to state claims upon which relief can be granted: (1) denial of medical care and unlawful use of mental health status, denial of medications, and "torture like" conditions; (2) denial of hearing aids; denial of confidentiality in legal mail; and (3) cruel and unusual conditions of confinement.  ECF 40 at 3-9.

Following remand, the Court granted Plaintiff leave to proceed IFP, reinstated the four claims set forth above and some of the Defendants previously terminated from this action, and directed that the TAC proceed to service on the following claims only: (1) Eighth Amendment claim for inadequate Hep-C treatment against Defendants James Rao, Deborah Graf, Debra Bonning, S. Michalek, Alice Schunk, Dale Artus, Carl J. Koenigsmann, and Peter Bogarak; (2) Eighth Amendment and ADA claims for deprivation of auditory/hearing aids against Defendants Rao, D. Pritchard, Michalek, Artus, Joseph Gullo, and Lucy Buther; (3) Eighth Amendment conditions of confinement claim against Defendants Joseph Noeth, Eric Schuessler, and J. Donahue; and (4) First Amendment claim for legal mail interference against Defendants L. Chudzik and J. Cross.  ECF No. 64 at 2.  The Court also noted that the Fourteenth Amendment due process claim against Defendants Noeth and Roemesser, ECF 29 at 34-38, and the First Amendment retaliation claim against Defendant Schuessler, *id.* at 41-42, both of which the Court previously found sufficient to proceed, remained pending and had been served on Noeth, Roemesser, and Schuessler.  ECF at 64 at 2-3.

On October 22, 2020, the Clerk's Office issued summonses and the United States Marshals Service proceeded to serve the summonses and TAC on the reinstated Defendants.  On November 3, 2020, summonses were returned unexecuted as to Defendants J. Cross, Joseph Gullo, and D. Pritchard with a letter from DOCCS stating that after a thorough and diligent search for these Defendants it could not locate anyone with these names ever being employed at Attica.[3]  ECF No. 67.

---

[3] Plaintiff's Motion for Miscellaneous Relief appears to request that Pritchard be dismissed but it is unclear whether Plaintiff also requests that Cross be dismissed.  ECF No. 85 at 2.  Pritchard is not named as a Defendant in the FAC's Caption or "Parties to Action" section, but Cross is.  ECF No. 71 at 2, 4-7.

On November 10, 2020, Plaintiff filed the FAC, ECF No. 71, but with no corresponding motion to amend the TAC.  *See* Fed. R. Civ. P. 15(a)(2); Loc. R. Civ. P. 15.  Plaintiff also filed a Motion for Default Judgment.[4]   ECF No. 72.  On December 4, 2020, several signed Acknowledgments of Service of the Summons and Complaint by Mail under N.Y.C.L.R. § 312-a(b) were filed on behalf of several Defendants.  ECF No. 74.  It appears that only three Defendants did not return signed Acknowledgments: Cross, Gullo, and Pritchard.  ECF Nos. 67, 74.  Within the next week, Plaintiff filed two additional Motions for Default Judgment, ECF Nos. 75, 77, and a Motion to Strike, which was construed as a third Motion for Default Judgment, ECF No. 76.  On December 8, 2020, the Court denied Plaintiff's Motions for the Appointment of Counsel, Summary Judgment, and Default Judgment.  ECF No. 78.  The Court also noted that to the extent that Plaintiff sought to file a FAC, he had to file a motion to amend.  *Id.*

Plaintiff thereafter filed Motions for Reconsideration, to File the FAC, and for Summary Judgment.  ECF Nos. 79, 80, 82.  The Court denied the Motions for Reconsideration and Summary Judgment and directed Defendants to respond to the Motion to File the FAC.  ECF No. 84.  Plaintiff later filed the additional Motions now before the Court.  ECF Nos. 85, 90, 98.  Defendants opposed the Motions to Amend and Substitute Parties.  ECF Nos. 94, 94-1.  Plaintiff filed two replies.  ECF Nos. 95, 96.  On April 23, 2021, the Court issued a Text Order stating that it would address the Motion to Compel Addresses when it addressed the other pending Motions and directing the parties not to file any additional motions or requests for relief, except motions for preliminary or emergency injunctive relief, until the pending Motions were decided.[5]

---

[4] Plaintiff had previously filed Motions for Appointment of Counsel and Partial Summary Judgment.  ECF Nos. 69, 70.

[5] Despite this Order, Plaintiff filed a Motion to Appoint Counsel on the basis that he would not have access to legal materials during upcoming medical treatment.  ECF No. 100.  The Court denied the Motion without prejudice because, based on the pending motions, there was nothing Plaintiff needed to do at the time.  ECF No. 100.  The Court also again directed Plaintiff not to file additional motions.  *Id.*  Again eschewing the Court's directive, Plaintiff then filed

## II.   Plaintiff's Motions

Despite some very confusing language and pleading, the Motions appear, at least on their face, to assume that the current operative pleading is the FAC.[6]  For example, the Motion to Amend notes that Plaintiff is dropping certain Defendants, seeking to replace certain Defendants who have been replaced by successors, *see* Fed. R. Civ. 25(d), "correct[ing the] identity [and] time frame" when certain defendants (*e.g.*, Annucci) knew of the alleged constitutional violations, and adding additional defendants ("third parties").  ECF No. 80 at 1-5.  Plaintiff also states that the FAC "restricts the violation from August 1-August 3, 2012, upon [his] arrival" at Attica from Southport, leaving out Defendant Pritchard.  *Id.* at 4.  However, as Defendants contend, Plaintiff does seek to assert additional or new claims and defendants to this action, some that arose after August 1-3, 2012, and some that also are raised in another action pending in this Court, *McFadden v. Koenigsmann*, 18-CV-06684 FPG ("the other action").

Plaintiff argues that he should have the opportunity to file the FAC because, upon remand, rather than "passing on the merits" of the TAC or allowing him to file an amended complaint as it permitted in the other action, which was similarly remanded by the Second Circuit, *see* 18-CV-06684 FPG, ECF No. 13 (Mandate), the Court simply permitted the four claims the Second Circuit found had been improperly dismissed and the two claims previously found sufficient in the TAC to move forward.  ECF No. 95 at 2 and 96 at 2-3 (Plaintiff's Replies); ECF No. 64 at 1-3.  Plaintiff is correct that the Court did not rule on the merits of Defendants' Motion to Dismiss the TAC because it revoked Plaintiff's IFP status and denied the Motion to Dismiss the TAC without

---

a Writ of Mandamus with the Second Circuit seeking the appointment of counsel, which was denied on May 21, 2021 (Mandate issued on July 20, 2021).  ECF No. 102.  On July 26, 2021, Plaintiff filed a letter requesting the appointment of counsel due to current health issues, ECF No. 103, which the Court denied, again, because based on the pending motions there was no need for any further action by Plaintiff at that time.  ECF No. 104.

[6] Because the Motions to Substitute and for Miscellaneous Relief are for the most part subsumed within the Motion to Amend, the Court considers them, in effect, as one Motion to Amend.

prejudice, but he is incorrect in asserting that the Court did not pass on the merits of the TAC. Prior to the filing of Defendants' Motion to Dismiss, the Court screened the TAC under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and dismissed all but two claims—viz., the due process claim against Defendants Noeth and Roemesser, and the retaliation claim against Schuessler.  ECF No. 40 at 10. The Second Circuit reinstated some, but not all, of the claims the Court had dismissed in that same Order.  ECF No. 61.

The Motion for Miscellaneous Relief, which does little more than further confuse which claims are pled in the FAC and against whom, states that Plaintiff is dismissing certain Defendants, such as Pritchard, and replacing certain Defendants with others who have succeeded the original Defendants in their positions since the filing of this action: Dr. Rao with Dr. Williams, Chief Medical Officers at Attica; Fonda with Maher, Directors, Office of Special Investigation; and Dr. Koenigsmann with Dr. Morley, Chief Medical Officer, DOCCS.  ECF No. 85.[7]   The Motion to Substitute Parties notes that Plaintiff is seeking to replace, pursuant to Fed. R. Civ. P. 25(d), Defendants Noeth with Superintendent Jane Doe #1 and J. Clinton with Deputy Superintendent of Programs John Doe #1; and that he is seeking to add a supplemental claim under Fed. R. Civ. P. 15(d) against new Defendants Deputy Superintendent of Programs C. Rossi and Mail Room

---

[7] The Motion also refers to Fed. R. Civ. P. 42 and appears to seek consolidation of some of the claims asserted in the FAC with those asserted in the other action.  Plaintiff states that he filed the other action after he faced "all sort[s] of obstructions in the for[m] of abuse of authority by Defendants" between 2015 and 2017, "which meant, correct names, titles, etc. of defendants were still on-going . . .detailing some of the same actions, that were continue/on-going" and replacing the names and titles of some Defendants.  ECF No. 85 at 1, 2.  Plaintiff continues that rather that directing Plaintiff to file an amended complaint in this action after it was remanded—something the Court had directed in the other action—to add claims the Court never addressed when it revoked Plaintiff's IFP status, the Court simply directed Defendants to respond to the TAC.  *Id.* at 2.

The Court is not able to discern which claims are the same in the FAC and the Second Amended Complaint in the other action, 18-CV-6684 FPG, ECF No. 47, or whether the two actions should be consolidated.  Because the Second Amended Complaint in the other action currently is subject to a motion to dismiss, *id.*, ECF No. 49, and because of the uncertainty regarding which claims duplicative, the Court denies without prejudice any request for consolidation. The parties are encouraged to discuss consolidation or, at least, what claims may still overlap after this Order and, if possible, enter a stipulation streamlining these two actions.

Supervisor Chudzik, alleging that they interfered with Plaintiff's mail on November 20, 2020 and denied him access to courts. ECF No. 90. This Motion attaches a "Supplemental Pleading[]." *Id.*

While noting that Plaintiff may claim that he is aiming to present one final operative pleading and that the FAC is intended primarily to correct things that have occurred since the commencement of this action back in 2015 and replace certain Defendants with others who succeeded them, the Court recognizes that the FAC does more than that. It appears to add additional claims not pleaded previously, and add Defendants not previously sued. *See, e.g.*, ECF 80 at 1 ("adding third parties;" "it is important that this Court knows all the essential facts, to[] to understand the malice and forethought [sic] to cause Plaintiff's death or severe mental distress, in order to silen[ce] him about the . . . murder, whom Plaintiff is responsible, but took a deal to remain silen[t]" on that murder when he pleaded guilty to other murders); McKay Dec., ECF No. 94, Exs. 3-4 at 103-05 ("Charts" prepared comparing claims asserted and defendants named in the TAC vis-à-vis those claims asserted and defendants named and/or added in the FAC). The FAC also appears to add additional claims against Defendants who were named in the TAC and served previously but only in relation to one of the six claims currently pending. Defendants' memorandum of law states that Plaintiff "is seeking to more than double the [number] of claims and defendants in this case." ECF No. 94-1 at 6.

The TAC and FAC presented by Plaintiff, as well as his Motions, are at times difficult to understand and illogical and add to the confusion of trying to compare one amended complaint (TAC) with the other (FAC). As a result, it is difficult to determine what claims have previously been directed to proceed to service and against whom, ECF No. ECF 64 at 2, and what claims may simply be amended claims, as opposed to new or supplemental claims. The Charts prepared by Defendants' counsel lay out the differences between the two amended pleadings and attempt to

delineate (1) what claims in the TAC remain in the FAC and have been served and against what Defendants, (2) what claims are asserted in the FAC, and which of those claims are either pre-existing or *new*, and (3) what Defendants are either *new* or pre-existing but added to a different or new claim.  ECF No. 94. at 103-05.  Plaintiff does not appear to argue with the accuracy of these two Charts and argues that he should be permitted leave to file and serve the FAC.  ECF Nos. 95, 96.

### III.     Defendants' Opposition to Motions

#### A.     Motion to Amend

Defendants oppose the Motion to Amend on several grounds.  ECF Nos. 94, 94-1.  Initially, Defendants argue that Plaintiff's assertions that his FAC will streamline or simplify the litigation are simply not true but, rather, the FAC will double the number of claims and defendants.  ECF No. 94-1 at 5-6.  Defendants claim the FAC seeks to add seven more claims and twenty additional defendants.  ECF No. 94-1 at 6; ECF No. 94,, Ex. 4 at 105 (Chart).  Defendants also assert that the FAC addresses events as far back as 1995 and at times "resembles a stream of consciousness, intermingling different claims and disregarding the headings that appear therein."[8]  ECF No. 94-1 at 6.  Plaintiff "again strings together allegations from hundreds of grievances, and it is unclear how many were already cited in the TAC."  *Id.*

Defendants then submit that the Motion to Amend should be denied based on the standards established under Fed. R. Civ. P. 15(a) and (d).  For example, Defendants claim, *inter alia*, that Plaintiff violated Loc. R. Civ. P. 15(a) when he did not attach the proposed FAC to the Motion to Amend and the FAC was not a "complete pleading superseding the prior pleading" and

---

[8] Plaintiff's papers in this and the other action are generally confusing and difficult to follow.  Although he is an experienced *pro se* litigator, Plaintiff nonetheless is *pro se* and entitled to "special solicitude."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks omitted).

incorporates by reference portions of the TAC.  ECF No. 94-1 at 8.  Defendants assert that the FAC does not clearly delineate what new claims are being added and what claims have changed between the FAC and TAC.[9]  The FAC reorganizes and "mostly re-writes" the six claims from the TAC currently pending and served on Defendants thereby preventing a paragraph-by-paragraph comparison of the TAC and FAC.  Further, the "new" eighth cause of action mixes Plaintiff's denial of Hep-C treatment claim with his eyeglasses claim; the former was reinstated by the Second Circuit and served, and the later was dismissed by the Court initially and not raised on appeal.  *Id.* at 8-9.  The other seven or so new claims "intermingle facts involving [the] original claims, such that is difficult to decipher the differences between causes of action."  *Id.*  Defendants assert that after six years of litigation and the number of amended complaints filed already, if Plaintiff wishes to add new claims and defendants, he should be required to file a separate action.

Defendants also oppose the Motion because of delay and prejudice.  They assert, among other things, that this case has been pending for six years with no discovery to date, that Plaintiff did not give any indication of his intention to file the FAC until he filed it without a motion more than three years after the TAC was filed,[10] and that he now seeks to add several new claims and defendants.  *Id.* at 10.  Some of the underlying events allegedly occurred as far back as 2010 and 2011, or earlier, and the first time any of the Defendants were aware of this action was in July 2018, when Noeth, Roemesser, and Schussler were served with the TAC.  The four reinstated

---

[9] Loc. R. Civ. P. 15(b) provides that, "[Unless the movant is proceeding *pro se*, the amendment(s) or supplement[s] to the original pleading shall be identified in the proposed pleading through the use of a work processing 'redline' function or other similar markings that are visible in both electronic and paper format."  Thus, there is no requirement that Plaintiff delineate the differences between the TAC and FAC.

[10] The FAC was filed within three weeks of issuance of the Second Circuit's Mandate and the Motion to Amend was filed within six weeks of the Mandate.  ECF Nos. 61, 71.

claims and Defendants were not served until November 2020.[11]  *Id.*  Defendants claim the Motion to Amend places them in an "unworkable situation" because the FAC cites hundreds of grievances and it is "impossible" to determine what grievances were previously cited in the TAC.  Plaintiff does not attempt to clarify this "and it would be unduly burdensome to have to obtain all the grievances from the various grievance departments, only to later find out which ones may be relevant (assuming they all still exist, which is almost certainly not the case since some involve events dating back ten years.)."  ECF No. 49-1 at 11.   DOCCS currently retains grievances for four years, plus the current year, meaning it only maintains grievances dating back to March 2016. *Id.* at 11 (citing DOCCS Directive No. 2011).  Plaintiff's claims often do not identify specific dates, names, and conduct allegedly engaged in by each Defendant, and "under the circumstances, depositions and interrogatories will be necessary just to understand Plaintiff's claims, and those cannot commence until Plaintiff stops continuously amending his pleading." *Id.*  Defendants assert they "have been and are continuing to be prejudiced by Plaintiff's unexplained delays, and Plaintiff should not be permitted to continue doing so."  *Id.*

Lastly, Defendants argue that the amendment should be denied because many of the claims alleged in the FAC would not withstand a motion to dismiss and are thus futile.  *Id.* at 12. Defendants argue that: (1) the FAC makes no allegations against some of the new Defendants and it contains duplicative claims that are raised in the other action,[12] ECF No. 49-1 at 12; (2) the FAC

---

[11] While Defendants' counsel's office (New York State Attorney General) was first notified of this action on or about September 30, 2016, when the Court's Order screening the First Amended Complaint and dismissing all claims asserted therein but with leave to amend, was forwarded to the Deputy Attorney General in Charge of the Buffalo Regional Office, ECF No. 17, as is the Court's practice, counsel could not have known or anticipated what claims would proceed until, at the earliest, October 2020, when the Second Circuit reinstated four specific and previously dismissed claims and vacated the revocation of Plaintiff's IFP status.  ECF No. 61.

[12] As noted above, Plaintiff acknowledges that some of the claims in the FAC are also pled in the other action, 18-CV-6684 FPG, ECF No. 47.  *See* ECF No. 85; *see also* n.2, *supra*.  For example, the FAC's second cause of action is brought against Defendants Bonning, Graf, Hawley, Noeth, Michalek, Schunk, Williams, and "M. ___ Z___, RN #401," and others.  These Defendants are also named in the other action in a claim alleging inadequate medical

seeks to revive claims dismissed previously or abandoned on appeal, *id.* at 13-15; (3) the claims against some supervisory officials not personally involved the events or conduct fail to state claims upon which relief can be granted, *id.* at 15-18; and (4) the FAC fails to state claims upon which relief can be granted and "rewrites" claims previously permitted to proceed, *id.* at 18-23.[13]

### B.   Motion to Substitute Parties

The Motion to Substitute Parties seeks to substitute Defendants Superintendent Noeth and Deputy Superintendent of Programs Clinton with their successors at Attica, Jane Doe Superintendent and John Doe Deputy Superintendent of Programs.   It also seeks to add a supplemental claim by way of a Supplemental Pleading attached to the Motion.   ECF No. 90. Defendants oppose the Motion on the grounds that: (1) Noeth and Clinton are sued in their individual capacities and Fed. R. Civ. P. 25(d) provides for substitution of a governmental official with his or her successor in office when the official is sued in his or her *official* capacity; and (2) the supplemental access to courts claim against Chudzik and a new defendant, C. Rossi, based on a failure to mail court documents in October and November 2020, is a "standalone" claim that can be timely brought in a separate action.   ECF No. 94-1 at 23-26.

Defendants are correct that Rule 25(d) speaks directly to substituting a governmental official with his or her successor only when the official is named in their official capacity.   From what the Court can discern from the TAC and FAC, neither Noeth nor Clinton, the former Superintendent and Deputy Superintendent of Attica, respectively, are sued in their official

---

treatment related to Plaintiff's cardiology appointments, pacemaker issues, and injuries to his left ankle and left arm in 2012.   ECF No. 71 at 15-21; ECF No. 49 at 77-90 (Ex. 2 (Copy of Second Amended Complaint in 18-CV-6684 FPG)).   The FAC's fourth cause of action also is duplicative of an access to courts claim regarding law library access asserted in the other action, 18-CV-6684 FPG.   ECF No. 71 at 31-36; ECF No. 49 at 92-93 (Ex. 2 (Copy of Second Amended Complaint in 18-CV-6684 FPG) at 20-21).   Defendants submit that due to these duplicative claims, permission to file the FAC should be denied.   ECF No. 49-1 at 13.

[13] Defendants' MOL also specifically addresses what claims it argues are futile.   ECF No. 94-1 at 12-23.

capacity.  Further, what is clear from both pleadings is that Plaintiff alleges that Noeth and Clinton were personally involved in certain constitutional violations and Plaintiff seeks to hold these Defendants responsible in their individual capacities and obtain monetary damages against them, something he could not do if these Defendants were named in their official capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("The Eleventh Amendment bars a damages action against a State in federal court.  This bar remains in effect when State officials are sued for damages in their official capacity.").  The FAC does seek prospective injunctive relief against "Defendants", ECF No. 71 at 71, but neither Noeth nor Clinton appear to be sued in their official capacities in the FAC.  Accordingly, Plaintiff's Motion to Substitute is denied.

This Motion also seeks to add as Defendants Rossi and Chudzik and add a new, supplemental denial of access to courts/interference with mail claim that occurred on or about November 20, 2020.  This claim is wholly unrelated to any of the events or occurrences asserted in the TAC and FAC.  ECF No. 90 at 2 and 4-7 (Attached Proposed Supplemental Complaint).  Rule 15(d) of the Federal Rules of Civil Procedure permits supplemental pleadings (*i.e.*, a pleading setting forth any transaction, occurrence or event that happened after the date of the pleading sought to be supplemented) with leave of court, but to allow Plaintiff to now add this entirely new and unrelated claim to this action that could be brought in a separate and currently timely action would not serve the interests of justice in any way and will simply add needless delay and, most likely, additional discovery and/or motion practice.  *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995 (a supplemental pleading must allege facts "connect[ed] . . . to the original pleading."); *see also Klos v. Haskell*, 835 F. Supp. 710, 716 (W.D.N.Y. 1993) (denying the inmate-plaintiff's motion to supplement the complaint because the allegations set forth in the plaintiff's

supplemental pleading contained allegations arising from events that occurred "a year later at two entirely different correctional facilities").

Accordingly, Plaintiff's Motion to Substitute Parties and file a Supplemental Pleading is denied.

### C.   Motion to Compel Addresses

Plaintiff asks the Court to compel Defendants to disclose addresses at which Defendants Joseph Gullo, Eric Schussler, and Peter Bogarak (or Bogarski) can be served.  ECF No. 98.  He claims that the United States Marshals Service's attempts to serve Gullo and Bogarak were unsuccessful and DOCCS falsely informed the Marshals Service that Gullo could not be located as having ever been employed at Attica.  *Id.* at 4.  Plaintiff provides a copy of a DOCCS Audiology Report, dated September 25, 2012, and Health Service System Request and Report of Consultation in relation to audiology services, dated August 29, 2012.  *Id.* at 5-6.  The Audiology Report is signed by a "Joseph Gullo" and the provider's named noted on the Consultation Report is Joseph Gullo-"Aud." DOCCS is directed to review its records and determine if Gullo was an employee of DOCCS at Attica or elsewhere, or if he was a private contractor, and, if that information can be located, provide an address at which he can be served. *See Valentin v. Dinkins*, 121 F.3d 72, 77 (2d Cir. 1997).

As to Schussler, he returned a Notice and Acknowledgement of Receipt of Summons and Complaint by Mail ("Acknowledgement of Service"), *see* N.Y. C.P.L.R. § 312-a(b), on November 25, 2020, ECF No. 74, and has thus been served.

As to Bogarak, no Acknowledgment of Service was returned, ECF No. 83, but he is not named a Defendant in the FAC.  Thus, to the extent Bogarak is not named a Defendant, the Motion is moot.

**IV.     Analysis**

The Court does not deny its concern regarding the "age" of this case and the fact that six years after its filing, the operative pleading is still in flux and discovery has yet to commence. There are legitimate reasons to deny the Motions, at least in part, and proceed simply with the six claims in the TAC already served, *e.g.*, delay, *cf. Hall v. North Bellmore Union Free Sch. Dist.*, No. 08-CV-1999 (JS)(ARL), 2010 WL 1049280, at *2-3 (E.D.N.Y. Mar. 18, 2010) ("Generally, courts will grant leave to amend when the moving party shows that it has not unduly delayed in proposing the amendment, and provides a valid justification for any such delay[.] . . . [T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.") (internal citations omitted), but there are sufficient equally legitimate reasons to grant, in whole or in part, leave to amend, which "should freely [be] giv[en] when justice so requires."  Fed. R. Civ. P. 15(a).

"[A]n amended pleading may be filed pursuant to Rule 15(a) where the new allegations do not unduly prejudice an opponent, are not the result of undue delay or bad faith, and are not futile." *Warren v. Goord*, No. 99 CV 296F, 2006 WL 1582385, at * 7 (W.D.N.Y. May 26, 2006).  If the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits.  *See United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989).  The Court again acknowledges its concern regarding the length of time this case has been pending and there being no discovery to date, but it must also acknowledge that the "delay" is not solely attributable to Plaintiff.  This case was first transferred to this District upon the Northern District's severance of certain claims arising in this District, after which the Court screened the First and Third Amended Complaints.  ECF Nos. 12, 17, 40.

Given this case's long and complicated history, a brief summary of the procedural history is again warranted.  After service of the TAC, ECF No. 46, Defendants filed a Motion to Revoke Plaintiff's IFP Status, which this Court granted.  ECF Nos. 57, 58.  Plaintiff then appealed, and the Court of Appeals vacated and remanded this case with directions to reinstate certain claims previously dismissed.  On remand, the Court reinstated those claims and directed that the TAC be served on certain Defendants.  ECF Nos. 61, 64.  Plaintiff filed the FAC within three weeks of the Court's Order directing service of the FAC, ECF Nos. 64 ,71, and the Motion to Amend was filed two weeks after the Court directed Plaintiff to file a Motion to Amend, approximately six weeks after he filed the FAC.  ECF Nos. 78, 80.  Thus, much of the delay is not attributable to Plaintiff.  Further, while much of Plaintiff's litigation conduct can be viewed as adding unnecessary layers of difficulty, the Court does not find that he engaged in dilatory litigation tactics sufficient to deny leave to amend.

Accordingly, at this time, the Court finds that the most efficient and equitable manner to address leave to amend and the other Motions, while difficult and time-consuming for the parties and the Court, is to review each claim asserted in the FAC and determine whether they are futile— *i.e.*, would they survive a Rule 12(b)(6) motion to dismiss, *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 50 (2d Cir.1991) (a district court abuses its discretion when it denies leave to amend based on futility if an amendment would allow the complaint to survive)—taking into account all issues raised by the parties, including, but not limited to, the repetitive nature of some claims, whether certain claims have previously been dismissed and not reinstated on remand or abandoned on appeal, whether the supplemental claims are related to the other claims, and whether the claims against certain supervisory officials lack merit.

16

### A.     Motion to Amend: Standard of Review

Leave to amend may be denied if granting leave is futile because the proposed amended complaint could not survive a motion to dismiss. *Soroof Trading Dev. Co. v. GE Microgen, Inc.,* 283 F.R.D. 142, 149 (S.D.N.Y. 2012) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility . . . is a minimal standard to overcome-perhaps the lowest bar." *Innomed Labs, LLC v. Alza Corp.,* No. 01-CV-8095, 2002 WL 1628943, at *2 (S.D.N.Y. July 23, 2002) (citing *Sumitomo Elec. Research Triangle, Inc. v. Corning Glass Works,* 109 F.R.D. 627, 628 (S.D.N.Y. 1986)). "[T]he court need not finally determine the merits of a proposed claim or defense, but merely satisfy itself that it is colorable and not frivolous." *Sumitomo Elec. Research Triangle, Inc.,* 109 F.R.D. at 628. "Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations." *Grace v. Rosenstock,* 228 F.3d 40, 53 (2d Cir. 2000).

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Dismissal is appropriate only where plaintiffs have failed to provide some basis for the allegations that support the elements of their claims. *See Twombly,* 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face.") "Simply stated, the question under Rule 12(b)(6) is whether the facts supporting the claims, if established, create legally cognizable theories of

recovery." *Cole-Hoover v. Shinseki*, No. 10-CV-669, 2011 WL 1793256, at *3 (W.D.N.Y. May 9, 2011).

In addition, the pleadings of *pro se* litigants must be construed broadly and "interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation, internal quotation marks and emphasis omitted). "However, mere conclusions of law or unwarranted deductions need not be accepted." *Alston v. Sebelius,* No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014) (internal quotation marks omitted).

**B.     The FAC's Claims**

Under the standards set forth above, the Court will review each claim set forth in the FAC and determine whether it would survive a motion to dismiss under Rule 12(b)(6) and therefore may proceed herein (and to service, if necessary). *See* Fed. R. Civ. P. 15(a)(3).

1.     <u>Denial of Hep-C Treatment</u>

Plaintiff alleges that upon his admission to DOCCS in 1995, he tested positive for symptoms associated with Hep-C and in 2002 he was finally diagnosed with Hep-C. In April 2004, a doctor at Albany Medical Center approved Hep-C treatment for Plaintiff but "Defendants" at the Clinton Correctional Facility ("Clinton"), Auburn Correctional Facility ("Auburn") and Attica refused to "re-offer" him Hep-C treatment. He was transferred to Attica on August 3, 2012. and denied Hep-C treatment. He was refused Hep-C "prompting" in 2015. ECF No. 71 at 13-14. Upon a review of Attica medical records regarding care and treatment of inmates with Hep-C, Defendant Morley—who replaced Defendant Koenigsmann as DOCCS Chief Medical Officer sometime after the initial Complaint in this matter (2015)—formulated a policy that refused to treat most Hep-C inmates; less than two or three out of 200 inmates with Hep-C were provided

treatment. *Id.* at 14. "Defendants" refused to provide Plaintiff Hep-C treatment prior to filing this action in 2015. Treatment was not provided until January 2019. *Id.* at 14-15.

Following remand, the Court, as directed, reinstated this claim, and directed it be served on Defendants Rao, Graf, Bonning, Michalek, Schunk, Artus, Koenigsmann, and Bogarski.[14] ECF No. 64 at 2-3. Defendants oppose leave to amend this claim because Plaintiff has rewritten it, "despite [it] having been found previously [to have] stated a colorable claim for medical deliberate indifference," and because it fails to "list[] a single defendant or what he or she did." ECF No. 49-1 at 21. This claim does refer to both Defendants Morley and Koenigsmann, but not others specifically, and alleges that they formulated a policy to deny to treatment to most Hep-C inmates before 2015 and, at least, until 2019 when Plaintiff received treatment. ECF No. 71 at 14-15. The Motion for Miscellaneous Relief, however, seeks to substitute Koenigsmann with Morley, and Rao—Chief Medical Officer at Attica—with Williams. ECF No. 85.[15] Morley and Williams are listed as Defendants but Koenigsmann and Rao are not. ECF No. 71 at 2, 4.

This raises the issue of whether, if leave to amend is granted on this claim—which it is— Morley or Koenigsmann or both should be included as defendants on this claim. First, this claim was reinstated by the Second Circuit and on remand ordered served on Koenigsmann and Rao. The Court, therefore, will not dismiss Koenigsmann or Rao, especially since they were the doctors alleged to have been involved in the denial of Hep-C treatment for much of the time alleged in all prior pleadings. Further, Plaintiff alleges that, at some time between 2015 and 2019 after he succeeded Koenigsmann, continued the denial of Hep-C treatment. The Second Circuit found that

---

[14] "Bogarak" may be "Bogarski" but neither names are set forth either the FAC's Caption or "Parties to Action[:] Defendants" section. ECF at 2, 4-7. Accordingly, Bogarak or Bogarski, to the extent he is a defendant in the FAC, is terminated from this action.

[15] The Motion also seeks to replace Fonda with Maher but neither Fonda nor Maher are alleged to have been involved in medical decisions at Attica and are alleged to have been Directors of the Office of Special Investigations, DOCCS, ECF No. 71 at 4. ECF No. 85.

the alleged denial of Hep-C treatment at Attica stated a claim upon which relief can be granted and, while it did not address specifically this allegation against Morley, the substantive nature of the claims is the same.  Further, while Plaintiff is an experienced *pro se* litigant, he still is entitled to have his pleading construed liberally.  In light of this, the Court finds that both Koenigsmann and Morley will be included as Defendants on this claim, as will both Rao and Williams.

As to leave to amend this claim, despite prior notice to Plaintiff that an amended complaint completely replaces all prior complaints, *see, e.g.*, ECF No. 12, 17, 28, the FAC's failure to refer to or name specific Defendants in this claim other than Morley and Koenigsmann, ECF No. 71 at 14-15, and the FAC's failure to assert specific factual allegations against them, should not be fatal to this claim.  Again, the Second Circuit found that the Court had improperly dismissed this very claim and directed that it be reinstated, along with three other claims.  While Plaintiff is an experienced *pro se* litigator, permitting him to plead himself out of a claim that the Second Circuit found stated a claim upon which relief can be granted would run wholly counter to the well-accepted doctrines that *pro se* pleadings must be construed liberally to raise the strongest arguments they suggest and that *pro se* litigants are entitled to special solicitude.  Further, most of the Defendants sued on this claim initially—except Morley and Williams—have been served with the TAC and are thus on notice of the allegations made against them and, therefore, there is no delay or undue prejudice.  *See, e.g.*, *Park B. Smith Inc. v. CHF Industries Inc.,* 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("[M]ere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend.").

Accordingly, this claim may proceed against Defendants Koenigsmann, Morley, Rao, Williams, Graf, Bonning, Michalek, Schunk, and Artus.  The Moton for Miscellaneous Relief, to the extent is seeks to replace Koenigsmann with Morley, Rao with Williams, and Fonda with

Maher is denied.  ECF No. 85.  Because Morley and Williams have not been served, the United States Marshals Service is directed to serve the Summons and FAC on them.  *See* Fed. R. Civ. P. 4(e); N.Y. C.P.L.R. § 312-a.  Service of the FAC on Defendants who have appeared in this action will be made by the Clerk of Court mailing a copy of FAC to their counsel.  *See Cavico v. Brown*, 18-CV-6329W, 2020 WL 9460506, at *2 (W.D.N.Y. Sept. 3, 2020) (Wolford, J).

2.   <u>Denial of Medical Care for Numerous Issues</u>

This claim is cumbersome and disjointed.  It begins with allegations that as far back in 2002, Plaintiff was diagnosed with a urinary tract infection and obstruction and that "Defendants" at Clinton[16] delayed surgery to remove the obstruction in retaliation for past grievances.  He did not receive surgery until 2004.  ECF No. 71 at 15.  On July 20, 2012, after suffering pain from an untreated urinary tract infection, he was treated at and released from the Upstate Medical Center ("Upstate") with instructions to follow up with urology in two weeks.  While at Upstate, Plaintiff overheard Auburn correctional officers lie in a scheme to reserve overtime pay.  The officers contacted DOCCS officials and claimed to be the family of a comatose inmate near death and asked that the inmate be kept alive so they could continue to guard the inmate and collect overtime pay.  *Id.* at 18.

Plaintiff, soon after his release from Upstate, was transferred from Auburn to Southport on August 2, 2012, where he was held overnight pending transfer to Attica with no medical care or his daily medications.  He was transferred to Attica on August 3.  He was not provided with his medications—including medication for his heart condition—from August 1 through August 7.  He also did not receive his eyeglasses and hearing aids.  *Id.* at 16-18.  On August 7, he was taken by

---

[16] None of the Defendants named, ECF No. 71 at 1, 4-7, were or are employed at Clinton.

21

ambulance to the Erie County Medical Center ("ECMC") for a heart problem.  He was discharged two days later to be "prep[ped]" for insertion of a pace-maker device.  *Id.* at 18.

Defendants Graf and Bonning, acting in concert with Defendant Noeth—who Annucci had appointed as the hearing officer for three separate misbehavior reports issued against Plaintiff by Auburn correctional officers in retaliation for his reporting the officers' fraudulent behavior at Upstate—had Plaintiff discharged from ECMC to Attica's SHU and placed on suicide watch on a "Special Unit" reserved for the most seriously mentally ill inmates.  These inmates yelled and kicked the iron gates all day, threw urine and feces, and left their waste in the "common shoulder," exposing Plaintiff to possible infection.  *Id.* at 18-19.   Plaintiff developed a foot and ear infection from taking cold showers.  Plaintiff complained to Defendants "M__Z__", RN #401, Hawley, and "__J__"[17] about his infections and was ignored.  He had suffered from recurring ear infections since 1999 causing a hearing loss which has required him to use hearing aids since 2001.  Plaintiff's hearing aids and eyeglasses were destroyed by Attica correctional officers Defendants Reddia and Bauer during cell searches to prevent him from overhearing and reporting misconduct like he had when he was hospitalized at Upstate.  *Id.* at 19-20.

Defendants Graf, Bonning, Schunk, Rao—who was replaced by Williams as Attica's Chief Medical Office at some time and whom Plaintiff seeks to replace with Williams, ECF No. 85— and Michalek, failed to properly supervise Attica's medical staff and denied Plaintiff (1) physical therapy for his fractured left ankle, (2) access to an audiologist to fix his hearing aids, (3) follow up cardiological and urology care, (4) medication during Ramadan, and (6) sick call requests.  *Id.* at 20.

---

[17] __J__" is not named as a Defendants in the FAC.  ECF No. 71 at 2, 4-7.

Defendant Noeth found Plaintiff guilty on one or more of the misbehavior reports and sentenced him to six months in SHU.  According to Plaintiff, Noeth denied Plaintiff inmate assistance, a timely disciplinary hearing, the right to call witnesses and present documentary evidence, and a fair and unbiased hearing.  *Id.* at 21.[18]

Defendants oppose leave to amend and argue that this claim (1) is new, (2) is duplicative or redundant of claims raised in the other action, 18-CV-06684 FPG, and (3) was not reinstated and remanded by the Second Circuit or was previously dismissed in the Court's prior Screening Order of the TAC (ECF No. 40 at 3-5, 10) and abandoned on appeal.  *See* ECF No. 49-1 at 12-14; *compare* ECF No. 71 at 5-21, *with* 18-CV-06684, ECF No. 47 at 7-20.  For these reasons, and the fact that much of this claim is unintelligible, *see Gonzales v. Wing*, 167 F.R.D. 353, 355 (N.D.N.Y. 1996) (failure to comply with the most basic pleading rules, Fed. R. Civ. P. 8 and 10, "presents far too heavy a burden in terms of defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of a plaintiff's claims[]"), leave to amend this claim is denied.

For example, like here, the Amended Complaint in the other action alleges that Defendants Graf, Bonning, Hawley, and Noeth (1) failed to return Plaintiff to ECMC for cardiological follow-up care and "prep" him for implantation of a pacemaker, (2) denied Plaintiff medical care for his left ankle injury, (3) subjected Plaintiff to retaliatory cell searches and disciplinary hearings, and (4) denied Plaintiff due process at the hearings.  *Compare* 18-CV-06684, ECF No. 47 at 7-8, 9-10, 19-20, *with* FAC at 15-21.  In fact, it readily appears that the allegations in the two pleadings are virtually identical.

---

[18] The coupling of the denial of medical care and due process in relation to disciplinary hearings is wholly illogical and confusing.  It appears that Plaintiff was simply trying to add or comingle claims from past pleadings in this and/or other cases, including the other action, 18-CV-06684 FPG, without any sense or purpose, hoping that something "sticks."  This illogical and sloppy pleading cannot and will not be countenanced.

Further, when the Court screened the TAC, it dismissed several claims because they failed to state plausible claims for relief under the Eighth Amendment. Some of these claims are re-alleged in the FAC and set forth in the following allegations of deliberate indifference: (1) denial of medical care—including denial of medications, eyeglasses and hearing aids—following placement in the mental health units at Southport and Attica, between August 1 through August 7, 2012, against Defendants Bonning, Rao, Graf, and Schunk, which contributed to his re-admittance at ECMC on August 9; (2) Bonning and Graf discharged Plaintiff from the mental health unit on August 9 and from August 10-16, Defendant Schussler subjected him to torture like conditions, ECF No. 40 at 3-5 (Order screening TAC); (3) Graf and Bonning delayed Plaintiff's Hep-C treatment; (4) Rao, Graf, and Schunk refused to treat Plaintiff's urological diagnosed and treated at Upstate in July 2012; (4) Rao and Schunk refused to treat a podiatric issue stemming from a prior assault and injury; (5) denial of treatment for an ear infection that caused further hearing loss; (6) Plaintiff was forced to take cold showers; and (7) Rao, Pritchard, Gullo, Annucci, and Buther denied Plaintiff auditory aids. *Id.* at 5-7. Only two of these Eighth Amendment claims—denial of Hep-C treatment and denial of auditory aids—were reinstated by the Second Circuit and remanded. The others were not reinstated and thus the dismissals of these claims were upheld on appeal or they were not raised by Plaintiff on his appeal and thus abandoned. *See* ECF No. 49, Ex. 1.[19]

This claim is (1) duplicative of claims raised in the other action, *see Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) ("[R]epetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. §1915[e] as malicious (quoting *Robinson v. Woodfork*, 834

---

[19] Specifically, the inadequate medical care/deliberate indifference claims raised in the Plaintiff's counseled brief were: refusal to treat Plaintiff's Hep-C and refusal to provide hearing aids. ECF No. 49, Ex. 1 at 7, 45-48 (Hep-C claim) and 55-58 (Hearing Aids). The Second Circuit reinstated those two claims, along with a condition of confinement and interference with legal mail claim. ECF No. 61.

F.2d 1023 (5th Cir. 1987)) and (2) was dismissed with prejudice previously and either not reinstated or abandoned on appeal.  Accordingly, this claim—and the request to replace Rao with Williams—would not survive a motion to dismiss and thus leave to add this claim is denied Further, the denial of Hep-C treatment and hearing aids claims that were reinstated and are putatively re-alleged in this claim are subsumed within the FAC's First and Eighth claims.  ECF No. 71 at 13-15 (First), 55-57 (Eighth).

### 3.    Denial of Due Process at Disciplinary Hearing

Plaintiff alleges that Defendants Noeth and Schussler denied him procedural due process to use the disciplinary process to cover up the misconduct of Auburn correctional officers that Plaintiff overheard and reported when he was hospitalized at Upstate.  ECF No. 71 at 21-31.  The Court previously found this claim was sufficient to proceed to service against Noeth and Schussler, *see* ECF No. 40 at 10; ECF at 64 at 2-3, and, therefore, leave to add this claim is granted.  As to Plaintiff's request to replace or substitute Noeth with Superintendent at Attica Jane Doe #1, ECF No. 90, it is denied on this claim, because it was Noeth who allegedly denied Plaintiff due process, not his successor as Attica's Superintendent.  *See Tangreti v. Bachmann*, 938 F.3d 609, 618 (2d Cir. 2020) ("[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (internal quotation marks and citation omitted)).  When this claim arose, Noeth was not Superintendent; rather he was a Captain who acted as the hearing officer on the misbehavior reports issued on August 1-3, 2012.

### 4.    Denial of Access to Courts

Plaintiff asserts that his denial of access to courts claim is a "new" claim in the FAC.  ECF No. 71 at 31-36; ECF No. 49-1 at 14, 21.  Upon his arrival at Attica on August 3, 2012, there was an "asserted effort by SHU and Law Library Officials" to prevent Plaintiff meaningful access to

materials, "i.e., writing paper, law material, notary service, copy services[.]"  This was intended to "stop and chill any pending actions" in state and federal court.  ECF No. 71 at 31.  Initially, Adamy and Greene,[20] Law Library Supervisors and Notaries, made tours of the SHU once a week to notarize documents, but "[l]aw [m]aterials are supposed to be delivered and picked up mainly by Defendant D. Bauer (CO). . . ."  *Id.*  But, according to Plaintiff, if Bauer did not like you, you would not get any services.  *Id.*  SHU officials used many tactics to control inmates on the unit. Defendants Counselor Donahue and Director of the Inspector General's Office Maher refused to remove these officials from Attica and prevented Plaintiff from transferring to another facility where he could obtain certain programming and services, *e.g.*, "college education," typing, and law library access.  *Id.* at 31-35.

The FAC appears to list several examples of various denials of law library services and grievances Plaintiff filed in relation to these denials.  Defendants referred to in this claim who *may* have denied him certain services or who allowed these practices to occur are: Adamy and Greene, *see supra* at n.20, Hembrook, Dutty, Moore, Spengler, Clinton, Boll, Noeth (as Superintendent), Bruen, and Annucci.  *Id.*

The Court previously dismissed this claim with prejudice because the First Amended Complaint failed to state a plausible denial of access to courts claim.  ECF No. 17 at 24-25, 40. This claim was not reinstated by the Second Circuit on appeal.  *Cf. United States v. Williams*, 475 F.3d 468, 471 (2d Cir. 2007) ("[T]he law of the case doctrine forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings" in the same case). Further, as addressed in that prior screening order, the mere limitation of access to legal materials

---

[20] As a further example of the confusing pleading, Plaintiff states that these two individuals are Defendants, but they are not listed as Defendants in the Caption or Parties to Action section of the FAC. Plaintiff's Motion to Amend, however, notes that these two Defendants are replaced in the FAC by Hembrook and Dutty.  ECF No. 80 at 4 ¶ 6.

without more, fails to state a violation of the First Amendment, as "the Constitution requires no more than reasonable access to the Courts." *Pickett v. Schaefer,* 503 F. Supp. 27, 28 (S.D.N.Y. 1980).

To state a constitutional claim, a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The FAC, construed liberally, fails to set forth any allegations regarding how Plaintiff was somehow hindered or prejudiced in pursuing a nonfrivolous legal claim. *Id.* at 351-52 (a plaintiff has not shown actual injury unless he shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials).

Accordingly, leave to amend to add this claim is denied.

5.   Interference with Legal Mail

This claim was reinstated by the Second Circuit and served on Defendants Cross and Chudzik. ECF Nos. 61, 64. The FAC additionally alleges that since 1995, Annucci "had urged DOCCS's Mailroom supervisors at Sullivan-Clinton-Auburn and now here at Attica . . . to open, inspect and maybe copy in-coming and out-going legal mail, and personal mail . . . ." ECF No. 71 at 36; ECF No. 49, Ex. 4 (Chart). This allegation against Annucci simply is too conclusory to set forth a plausible claim against him. *See Tangreti*, 938 F.3d at 618. There are no plausible allegations that Annucci himself interfered with Plaintiff's legal mail at Attica some seven years after he allegedly urged other mailroom personnel at three prior facilities to open Plaintiff's mail.

Accordingly, this claim may proceed against Chudzik and Cross, but leave to amend it to include Annucci is denied.

6.    Conditions of Confinement-Plaintiff Subjected to "Torture"

This claim was reinstated by the Second Circuit and served on Defendants Noeth, Schussler, and Donahue. ECF No. 61, 64. The FAC seeks to add several Defendants to this claim: Annucci, Bauer, Bonning, Chudzik, Cross, Graf, Hawley, Hembrook, Morley, Maher, Norton, Reddia, Roemesser, Schunk, Williams, and "M __ Z __., #401." ECF No. 71 at 40-48; ECF No. 49, Ex. 4 (Chart). It also extends the date of the alleged violation from August 2012 through March 2017. ECF No. 71 at 40.

As summarized in the Second Circuit's decision, Plaintiff alleged that he suffered from several deprivations and unsanitary conditions when placed under mental health observation (Special Unit) at Attica following his transfer there in August 2012,[21] including the denial of "food, showers, eyeglasses, hearing aids or medication[]" and hot water. ECF No. 61 at 9. He also was subjected to cold weather and cold showers, and "[e]xcessive and [h]arassing use of [a] leg iron that re-injured a prior broken left ankle bone." *Id.* He further alleged that the inmates he was housed with "kick[ed], yell[ed], bang[ed], thr[e]w feces [and] urine, leave waste in showers [and] blood on walls." *Id.* The Defendants Schussler, Bauer, and Reddia (also referred to as "Reddie" or "Raddia") knew that these conditions were in violation of New York Correction Law and unconstitutional and did not take action to mitigate them. ECF No. 71 at 47 (restating these same allegations but against additional Defendants Bauer and Reddia); ECF No. 61 at 9 (reinstating these claims); ECF No. 64 (directing service of this claim on Schussler, Noeth, and Donahue). Defendants Schussler, Bauer, Reddia, and Norton, revealed Plaintiff's medical history to other inmates—*e.g.*, Plaintiff has AIDS, is a "rat"—thereby placing Plaintiff in "enemy-situations" that

---

[21] *See* ECF No. 71 at 19 ("[W]hen Plaintiff was returned from ECMC [on or about August 3, 2012]. . . Graf [and] Bonning had discharged Plaintiff to Attica . . . and placed on a 'Special Unit' . . ., where [Attica's] most severe mental health condition[s] [were placed] . . . .").

placed him in danger.  ECF No. 71 at 46-47.  Inmates' personal mail was given to other inmates to create further conflict and control the inmates.  Plaintiff complained to Schussler, who retaliated by filing false misbehavior reports to cover-up this misconduct.  *Id.* at 47.

The FAC also alleges that Defendants Annucci, Morley, Williams, Noeth, Graf, Schunk, Bonning, Hawley, M__Z__ #401, Hembrook, Bauer, Reddia, Schuessler, Roemesser, Cross, Chudzik, and others, "all without exception not only [kn[e]w that Plaintiff has the [c]onstitutional [r]ight to all of th[i]s humane treatment"[22] as set forth in various DOCCS Directives, New York Correction Law, and the New York and United States Constitutions.  *Id.* at 42.

Despite the FAC's generally conclusory allegations and lack of more specific factual allegations related to Defendants' actual involvement in these violations[23]—as was the case with Plaintiff's prior pleadings—and the expansion of the timeframe encompassed by the TAC, the Second Circuit reinstated these identical claims and stated that the TAC, "liberally construed, suggest[ed] that certain Defendants[] would have been aware of the conditions to which [Plaintiff] claims he was subjected, either because they caused the conditions to occur (i.e. cold weather) or because the conditions were easily noticeable."  ECF No. 61 at 9-10 (citing *Gatson v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001) (noting that merely alleging that defendants made "daily rounds" of a prison and were "directly responsible" for an inmate's placement is enough to claim they had actual knowledge of the conditions of confinement)).  "[Plaintiff's] allegation that Defendants failed to act despite such knowledge is enough to state a colorable claim under the Eighth

---

[22] The FAC lists several state and federal rights inmates are guaranteed in prison that Plaintiff was denied with reference to their apparent legal source and claims that all these Defendants were aware of these rights and the violations and deprivations he suffered.  ECF No. 71 at 41-44.

[23] For example, Plaintiff does not allege when Dr. Morley replaced Dr. Koenigsmann as DOCCS's Chief Medical Officer, or when Dr. Williams replaced Dr. Rao as Attica's Chief Medical Officer, and whether Drs. Morley and Williams were in those roles at the time these alleged violations occurred.  ECF No. 71 at 40.

Amendment." ECF No. 61 at 10. The Court therefore finds that this claim is not futile and may proceed herein.

The issue regarding replacing Koenigsmann with Morley, Rao with Williams, and Fonda with Maher, ECF No. 85, must again be resolved. Because the allegations that were reinstated by the Second Circuit and the "new" ones asserted herein appear to refer to events between 2012 and 2017, ECF No. 71 at 40, and relate to the conditions of confinement at Attica, these claims should proceed against Koenigsmann and Morley, and Rao and Williams—all of whom may have been in their respective roles at some time during the time period alleged—but not Fonda and Maher. There is nothing to suggest that as Directors of the Office of Special Investigations, either Fonda or Maher were personally involved in the alleged Eighth Amendment violations relating to the conditions of confinement at Attica. *See Tangreti*, 938 F.3d at 618. Accordingly, Plaintiff's Motion is denied to the extent it seeks to replace Koenigsmann with Morley, Rao with Williams, and Fonda with Maher.

Accordingly, the Court grants Plaintiff leave to amend this claim as to Defendants Annucci, Koenigsmann, Morley, Rao, Williams, Noeth, Graf, Schunk, Bonning, Hawley, M__Z__ #401, Hembrook, Bauer, Reddia, Schuessler, Roemesser, Donahue, Norton, Cross, and Chudzik; and denies Plaintiff's Motion for Miscellaneous Relief to the extent it seeks to substitute Morley for Koenigsmann and Williams for Rao, ECF No. 85.

7.     Retaliation

The Court permitted this claim to proceed against Defendant Schussler upon screening of the First Amended Complaint, ECF No. 7, and the TAC. *See* ECF No. 17 at 36; ECF No. 40 at 3, 10; *see also* ECF No. 64 at 2-3. Plaintiff now seeks to add several Defendants to this claim— Annucci, Bauer, Donahue, Hembrook, Moore, and Spanlgler. ECF No. 71 at 49-54; ECF No. 49,

Ex. 4 at 105 (Chart). The allegation that survived screening was that Schuessler filed a false misbehavior report against Plaintiff after it had been reported to Schuessler that Plaintiff had complained about a sexually abusive comment Schuessler had made. ECF No. 17 at 36. This allegation is re-alleged in the FAC. ECF No. 71 at 49. However, the allegation that Donahue reported Plaintiff's complaint to Schuessler did not proceed to service against Donahue and was dismissed. ECF No. 7 ¶ 61; ECF Nos. 17 at 34, 36, 39. Thus, to the extent this retaliation allegation is re-alleged against Donahue, ECF No. 71 at 49, leave to amend is denied.

The FAC appears to add additional retaliation claims against Donahue, ECF No. 71 at 50-51, and, possibly, other Defendants—Annucci, Bauer, Hembrook, Maher, Moore, and Spengler, *id.* at 51-54. Plaintiff alleges that Donahue retaliated against him when Donahue learned that Plaintiff had complained to the Office of Special Investigation about Donahue telling Schussler about Plaintiff's complaint regarding Spangler's sexual advance or comment. Donahue allegedly refused to remove false information from Plaintiff's inmate file, refused to allow Plaintiff the opportunity to review his inmate file, refused to process a "CMC" Appeal, refused to grant Plaintiff good time credits in SHU, and on October 13, 2015, when Plaintiff warned Donahue he would not get away with his abuse, Donahue filed a false misbehavior report against Plaintiff. These allegations, other than the one on October 13, 2015, were, at least in part, raised in the First Amended Complaint, ECF No. 7 ¶ 51, and dismissed. ECF Nos. 17 at 34, 36, 40 at 10-11, 41-42. The Court previously dismissed all retaliation claims except the one against Schuessler. From what the Court can tell, these claims were not re-alleged or raised in the TAC, ECF No. 29 at 41-42, nor reinstated by the Second Circuit. Accordingly, they cannot be re-alleged in the FAC and leave to amend is denied.

31

As to the October 13, 2015 allegation against Donahue, the filing of a misbehavior report in retaliation for protected conduct may state an actionable retaliation claim. *See Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted). An adverse action is "conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (internal quotation marks omitted). Based on the FAC's allegations, this October 13, 2015 retaliation claim may proceed to service against Donahue. The Court acknowledges that there may be timeliness and relation back issues with this claim, *see* Fed. R. Civ. P. 15(c), and permitting this claim to proceed does not preclude Defendants from moving to dismiss or for summary judgment on this claim or any other surviving claim in the FAC.

The additional Defendants Plaintiff seeks to add to this claim, however, are different. The claims are wholly conclusory and, to be frank, incoherent. *See* ECF No. 71 at 54. Plaintiff, as he has done in the past and despite being told it is not a proper manner of pleading, *see* ECF No. at 35, simply lists several alleged acts of retaliation and the grievances he filed and against whom, and then summarily alleges that Defendants have ignored systematic practices of retaliation "for anyone who challenges the conditions of their confinement, which is very well known to Defendants" Annucci, Maher and others. ECF No. 71 at 54. He does not allege in any coherent manner what act or acts were taken it retaliation for what grievance(s) he filed.

As noted by the Second Circuit, claims of retaliation are easily fabricated, and the courts must "examine prisoners' claims of retaliation with skepticism and particular care," *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), requiring "'detailed fact pleading . . . to withstand a motion to dismiss.'"  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) (quoting *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981)).  To survive a motion to dismiss, retaliation claims must be "supported by specific and detailed factual allegations," and not stated "in wholly conclusory terms."  *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (internal quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (wholly conclusory claims of retaliation "can be dismissed on the pleadings alone"); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (same).

Accordingly, leave to amend is granted with respect to the pre-existing retaliation claim against Schuessler and the retaliation claim against Donahue related to the October 13, 2015 allegation only, but denied as to all other allegations and Defendants.

### 8.   Denial of Hearing (Auditory) Aids and Eyeglasses

Plaintiff's Eighth Amendment and ADA claims alleging the denial of hearing (auditory) aids was reinstated by the Second Circuit and ordered served on Rao, Pritchard, Michalek, Artus, Gullo, and Buther.  ECF Nos. 61, 64.  The denial of hearing aids claim will proceed against these Defendants, *see* ECF No. 64, but to the extent he seeks to add Annucci, it is denied.  Plaintiff odes not allege Annucci's personal involvement in the denial of hearing aids.  *See Tangreti*, 938 F.3d at 618.

The alleged denial of eyeglasses, however, is a new claim sought to be added in the FAC. Plaintiff was assaulted on August 1, 2012, and his eyeglasses and hearing aids were destroyed.  He was transferred first to Southport on August 1, 2012, and then to Attica on August 3, without his

hearing aids and eyeglasses. His eyeglasses were not replaced until September 2012 and his hearing aids were not replaced until November 2, 2012. Plaintiff immediately requested a reasonable accommodation and filed several grievances related to his hearing aids and/or eyeglasses. ECF No. 71 at 56. In this claim, Plaintiff only refers to Defendants Annucci and Gullo, the audiologist, but there are no allegations that either of these two Defendants were personally involved in denying Plaintiff his eyeglasses at Attica between August and September 2012. The reference to Annucci dates to 1999 and an "order" that Plaintiff be held in "Ad. Seg." at Sullivan Correctional Facility. During this confinement in Ad. Seg., Plaintiff was denied medical care and developed an ear infection. In August 2000, Plaintiff finally saw an audiologist who diagnosed him with significant hearing loss and recommended hearing aids. None of these allegations have anything whatsoever to do with the denial of eyeglasses after Plaintiff's transfer to Attica. Accordingly, the claims relating to the failure to replace Plaintiff's eyeglasses fail to state a claim upon which relief can be granted and leave to amend to add this claim is denied.

9.  Denial of Right/Ability to Maintain Familial Relationships

In the FAC, Plaintiff seeks to add a new denial of right/ability to maintain familial relationships claim. This claim is, again, confusing and illogical and purports to allege a conspiracy or attempt to isolate Plaintiff from his family members and others since 1994. "Since October 7, 1994, County and State Officials attempted to isolate from family, friends, lawyers . . . anyone on the outside, which was behind the removal of both personal and legal documents on February 8, 2018, by orders of Defendant J. Moore (Deputy, OSI) executed by Defendant J. Spangler (Deputy OSI) . . . prompting a grievance . . . and to deflect official misconduct . . . ." ECF No. 71 at 57-58. This—presumably the removal of documents from his file—was consistent with the "past practice" of filing false misbehavior reports and denying Plaintiff due process at the

subsequent disciplinary hearings. *Id.* at 58. Defendant Noeth—presumably Attica's Superintendent in February 2018—assigned Defendant Donahue to conduct the disciplinary hearings at which Plaintiff was allegedly denied due process. *Id.* at 58.

Defendants Michalak, Williams, Schunk, and others had an "obligation" to contact Plaintiff's emergency contact whenever he was hospitalized or suffered a health emergency, which Defendants failed to do on October 10, 2019. This was not an isolated failure; similar incidents occurred on April 19, 2011, when Plaintiff suffered a heart attack and on February 18, 2007, when Plaintiff was assaulted at Clinton. *Id.* According to Plaintiff, Annucci encouraged this conduct to keep Plaintiff incarcerated at facilities furthest from his family. Plaintiff did not speak to his family until 2000, after he was transferred to Clinton. *Id.* This did not just apply to family members; in 2019,[24] someone interfered with a scheduled call with Plaintiff's attorney. *Id.*

This claim purports to assert a denial of Plaintiff's ability to maintain family relationships. Liberally construed, it alleges that Defendants denied Plaintiff the right of free association protected under the First Amendment by housing him at facilities farthest from his family. "This right, as applied to prisoners, is among the rights least compatible with incarceration." *Kruppenbacher v. Annucci*, 2020-CV-010 (LLS), 2021 WL 412281, at * 5 (S.D.N.Y. Feb. 3, 2021) (quoting *Overton v. Bazzetta* 539 U.S. 126, 131 (2003)).

> [I]n *Overton*, the Supreme Court declined to consider whether there is a First Amendment right to visitation in prison: "We need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration.". . . . Where the Second Circuit assumed without holding "that prisoners have a right under the First Amendment to have family visits," the Circuit noted that the "right could not require that visits by family members be

---

[24] This date is known only by the reference in the FAC to the Grievance Number: No. A-76644-19, of the grievance Plaintiff filed in relation to this incident. ECF No. 71 at 58. The FAC lists over one hundred grievances Plaintiff claims he filed in relation to the claims alleged. *Id.* at 8-12. The grievances are listed by reference to the claim ("cause of action") and page number to which they refer. *Id.*

permitted on demand, but rather must be subject to reasonable restrictions on the time, place and manner of visits."

*Krupenbacher*, 2021 WL 412281 at *5 (internal citations omitted).

Here, even assuming there is a First Amendment right to family visitation, Plaintiff has not stated a constitutional claim.  What he alleges is that Defendants placed him in facilities that made it difficult for his family to visit him and that his family was not notified when he suffered serious health issues.  These allegations do not support a claim that he was denied a First Amendment right to freedom of association.  A prisoner has no constitutional rights to be confined in a particular prison facility or transfer to a prison of his choosing.  *See, e.g.*, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules"); *Andrews v. Semple*, No. 3:17-cv-1233 (SRU), 2017 WL 5606740, at *4 (D. Conn. Nov. 21, 2017) (dismissing due process claim that prison officials refused to transfer inmate to prison facility of his choice, because "he has no constitutionally protected right to be housed" at specific facility).

Accordingly, Plaintiff's claims related to his confinement in facilities that made it difficult for his family to visit him and that his family was not notified when he suffered medical emergencies is futile and leave to amend the FAC seeking to add this claim is denied.

### 10.    Conspiracy Allegations

This new conspiracy claim, as best this Court can discern, alleges a decades old, far-ranging conspiracy, involving, among others, Louis Pataki—the former Governor and then gubernatorial candidate George Pataki's campaign manager and brother—, Defendants Dale Artus and Annucci, a New York State Parole official, local prosecutors and law enforcement officers, and former

36

Governors Andrew Cuomo and George Pataki, to prevent Plaintiff from going public with the true cause of the death of a woman in 1994.[25]  This conspiracy allegedly resulted in the August 1, 2012 assault by Clinton correctional officers that occurred while Plaintiff was on a cardiology appointment, the denial of Hep-C treatment since 2004 and later, and other misconduct at Attica following his transfer there on August 3, 2012.   At some point, Artus was appointed Superintendent at Attica by Annucci, where he remained until his retirement in 2016 or 2017.  ECF No. 71 at 59-64.

According to the FAC, in 1994, Plaintiff reported to his parole office in Peekskill, New York but unbeknownst to him he had become a suspect in two murders in September 1994 in the Village of South Nyack-Grandview, New York.  This was a pretext to get Plaintiff to go to the Peekskill Police Department to obtain fingerprints and photos, while Senior Police Officers spoke with "Lou," presumably Louis Pataki.  Plaintiff was released and told to report to the South Nyack-Grandview Police Department on October 7, 1994.  At the same time, the Director of Parole and the Nassau and Rockland County District Attorneys had agreed with Lou that Plaintiff would be released and followed until the media had generated an arrest event or photo-op as Plaintiff was walking into the police station.  Lou agreed that Plaintiff would become another "Willie Horton;" a reference to the 1998 United States Presidential Campaign where the Democratic challenger for President, Michael Dukakis, was accused of allowing an inmate to be released on parole while he was the governor of Massachusetts and the parolee killed someone while on parole.  ECF No. 59-60.

In route to the Peekskill Police Department, while Plaintiff was being followed, he struck and killed a woman.  In exchange for his silence regarding how this death occurred, Plaintiff agreed

---

[25] The Court acknowledges the questionable relevance and credibility of these allegations but finds it necessary to include these allegations herein for a full understanding of Plaintiff's claims.

to plead guilty to the other crimes for which he was a suspect in consideration for the sentence he would receive. *Id.* at 62-63. Plaintiff learned in 2008, that his conditional release date was changed from 2006 to 2028. Plaintiff complained to then Governor George Pataki and threatened to go public about what occurred in 1994 and Pataki, through the then-Commissioner of DOCCS, Glenn Goord, gave Artus, then Superintendent at Clinton, the "green light" to silence Plaintiff. On October 1, 2006, Plaintiff was assaulted at Clinton. Annucci, who was an "associate" of one of Plaintiff's "victims," and Artus attempted to silence Plaintiff by denying Plaintiff Hep-C treatment and having Plaintiff assaulted on August 1, 2012. *Id.* 62-64. Andrew Cuomo, former Governor and Attorney General of New York, knew these facts and "sold them" for former United States Senator Alphonse D'Amato's support of his father, then Governor Mario Cuomo, instead of the Republican Candidate George Pataki, in the 1994 New York Gubernatorial race. *Id.* at 60

As best understood, Plaintiff alleges a conspiracy to have him killed by Defendants Annucci and Artus, who allegedly had him assaulted and denied necessary medical care so that Plaintiff did not disclose the cause of the woman's death in 1994. First, as noted by Defendants, none of them have any involvement in local prosecutorial decisions. ECF No. 49-1 at 19. Plaintiff attempts to link Annucci to this purported conspiracy by alleging that Annucci was an associate of the South Nyack-Grandview crime victim or a detective and attended a meeting with the victim in 1995. Through this, he links Defendant Artus to the conspiracy. Without commenting on the credibility of these conspiracy allegations, it is abundantly clear that the allegations are, at best, wholly conclusory and do not support a plausible claim that Annucci and Artus, along with others, conspired to deprive Plaintiff of his constitutional rights and tried to kill him by having him assaulted and denied medical treatment while in DOCCS custody at Attica. *See, e.g.*, *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam); *see also Ciambriello v. County of Nassau*,

292 F.3d 307, 324-25 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (internal quotation marks omitted).

Accordingly, leave to amend the FAC to add this claim is denied.

11.    A Conspiracy to Retaliate by Use of Prison Disciplinary Process Cover Up Official Misconduct

Plaintiff's new claim regarding a conspiracy to cover up official misconduct and retaliate is confusing and illogical.[26]  He appears to allege that on November 30, 2012, Defendants Attica Superintendent Noeth, used the disciplinary process to confine Plaintiff based on false misbehavior reports issued to cover up official misconduct.  ECF No. 71 at 65.  According to the allegations, it appears that one of the instances of misconduct Defendants sought to cover up was the April 2011 conversation among Auburn correctional officers that Plaintiff overheard while he was a patient at Upstate during which the officers lied about being a dying inmate's family to obtain overtime pay and defraud the state.  *See supra* at 22-23; ECF No. 71 at 21-31.  Following the incident at Upstate, Plaintiff filed grievances and other complaints and was threatened with physical violence, presumably well after April 2011, when this incident occurred.  *Id.* at 65-66.  Plaintiff was taken to an outside hospital at least eight times because he was denied medical care and medication for his heart. On August 1, 2012, Plaintiff's cardiologist said his heart condition was not improving. *Id.* at 66.

On August 1, 2012, when Plaintiff left Auburn, he was strip-searched and placed in an area with other inmates although his classification status requires him to be separated from other inmates. This provided inmates with an opportunity to exchange contraband.  When Plaintiff

---

[26] *See supra* at n.25.

returned to the holding area, all the other inmates had returned to their respective facilities. Rather than searching the holding area before placing a fully restrained Plaintiff there, he was placed in a glass secured and separate room. He had to use the bathroom, which was in the same room, and while in the bathroom with one hand out of the cuffs, he suffered chest pains and requested a "nitro pill." He next recalls being in an ambulance and he demanded to see the FBI "because escort staff was trying to cause [his] death." *Id.* at 66. Plaintiff was taken to Upstate and placed in the "U7" ward when Annucci and others in DOCCS Central Office ordered the "CERT" team to remove him from the hospital and transport him to Southport, where he was placed on suicide watch, while Defendants decided how to cover up the misconduct. Defendants decided to have Plaintiff attempt an escape and commit "S[u]icide by Cop." *Id.* at 67. He was held in the mental health unit, even though the psychologists did not sign off on his placement there. *Id.* Defendants then came up with a "plot" to issue three misbehavior reports, dated August 1 and 2, 2012, and after being cleared for transfer by the psychologists, Plaintiff was transported to Attica on August 3. *Id.*

Defendant Noeth, after placing Plaintiff in the mental health unit and denying him all medication and his eyeglasses and hearing aids, used this opportunity to deny Plaintiff a timely Tier III Superintendent's Hearing. Because Plaintiff had been cleared for transfer, there was no basis for not holding the hearing within seven days. *Id.* Defendants eventually confined Plaintiff to SHU for 60 months, during which he was subjected to everything "humanly possible." *Id.* Defendants were aware of the conditions under which Plaintiff was confined but ignored them because they either wanted to cause his death or severe mental illness so he could be drugged and controlled. *Id.* "It has been Defendant Annucci['s] long wish that the severe hardship he would subject Plaintiff to . . . in SHU," would lead Plaintiff down the path of so many other SHU inmates who request mental health treatment "in order to manipulate themselves out of the Disciplinary

Sanctions and avoid having to be in dangerous institutions like Attica [and others]," but Plaintiff refused to go down this path. *Id.* at 67-68.

Liberally construed, this claim, as best understood by the Court, alleges that Noeth retaliated against Plaintiff on November 30, 2012, when Plaintiff was sentenced to 60 months' SHU confinement at Attica, presumably following a Tier III Superintendent Hearing held in relation to the misbehavior reports issued on August 1-2, 2012. As alleged, the retaliation was, in part, due to the events in 1994 and 1995 regarding the alleged cover up of a woman's death and the April 2011 incident where Plaintiff overheard Auburn correctional officers trying to fraudulently collect overtime pay. ECF No. 71 at 65-66. As noted above, *see supra* at 32-34, claims of retaliation are easily fabricated, and the courts must "examine prisoners' claims of retaliation with skepticism and particular care," *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), requiring "detailed fact pleading . . . to withstand a motion to dismiss." *Flaherty*, 713 F.2d at 13 (internal quotation marks omitted); *see also Friedl*, 210 F.3d at 85-86 (to survive a motion to dismiss, retaliation claims must be "supported by specific and detailed factual allegations," and not stated "in wholly conclusory terms.") (internal quotation marks omitted)). Plaintiff's retaliation claim against Noeth and Annucci simply cannot withstand this scrutiny and leave to amend to add this claim is denied.

### 12.    Sequence of Retaliatory Actions

The FAC continues with a section titled "Sequence of Retaliatory Actions." *Id.* at 69. Defendants construe this section as a separate claim sought to be added, and not part of the Eleventh Claim. ECF No. 49, Ex. 4 at 105 (Chart). What is clear, however, is that the claims alleged are supplemental claims that occurred in 2020 and later, years after August 1-3, 2012, which Plaintiff has noted are the primary dates of his claims herein. ECF No. 80 ("The

41

Amendment restrict[s] the violation from August 1, 2012 [through] August 3, 2012, upon arrival at Attica C.F. from Southport C.F. . . . .").  Further, while Plaintiff may wish to include these claims within this action because some, at best, attempt to allege that they are part of some decades old retaliatory pattern or scheme that began in 1994 or 1995 by Annucci, they simply do not relate to or arise out of any of the same transactions or occurrences of the other claims asserted in the FAC.

As addressed above, *see supra* at 14, while supplemental pleadings are permitted with leave of court, Fed. R. Civ. P. 15(d), there is no basis to add these claims to this action at this time. Granting leave to add the supplemental claims would not be in the interest of justice and would cause needless delay and require potentially lengthy discovery and motion practice to a case filed over six years ago.  *See Quaratino*, 71 F.3d at 66 (a supplemental pleading must allege facts "connect[ed] . . . to the original pleading."); *see also Klos*, 835 F. Supp. at 716 (denying the inmate-plaintiff's motion to supplement the complaint because the allegations set forth in the plaintiff's supplemental pleading contained allegations arising from events that occurred "a year later at two entirely different correctional facilities").   Thus, leave to amend the FAC to add the claims set forth in this section is denied.  Plaintiff, as with his supplemental denial of access to courts/mail interference claim against Rossi and Chudzik, *see supra* at 13-14, may file a new action, within the unexpired three-year statute of limitations applicable to actions filed in New York under section 1983.  *See Owens v. Okure*, 488 U.S. 235, 251 (1989).

## ORDER

IT IS HEREBY ORDERED that Plaintiff's (1) Motion to Amend, ECF No. 80, and proceed with the FAC, ECF No. 71; (2) Motion for Miscellaneous Relief, ECF No. 85; and (3) Motion to Compel Addresses, ECF No. 98, are GRANTED IN PART and DENIED IN PART, as follows:

(1)(a) Leave to amend to asset the FAC's First Claim is GRANTED and may proceed against Defendants Morley, Koenigsmann, Rao, Williams, Graf, Bonning, Michalek, Schunk, and Artus, only, (b) the Motion for Miscellaneous Relief is DENIED to the extent it seeks to replace Defendant Koenigsmann with Morley, Defendant Rao with Williams, and Defendant Fonda with Maher, (c) the Clerk of Court is directed to cause the United States Marshals Service to serve the Summons and FAC on Morley, at the New York State Department of Corrections and Community Supervision, 1220 Washington Avenue, #9, Albany, New York 12226, and Williams, at Attica Correctional Facility, 639 Exchange St., Attica, New York 14011, without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; (d) the Clerk of Court is directed to add DOCCS Chief Medical Officer Dr. Koenigsmann and Attica Chief Medical Officer Dr. Williams, to the Caption of this action, and (e) to the extent Plaintiff seeks to assert the First Claim against Defendant Bogarak (Bogarski),[27] that claim is DISMISSED;

(2)(a) Leave to amend to assert the FAC's Second Claim is DENIED, and (b) the Motion for Miscellaneous Relief to the extent it seeks to replace Rao with Williams is DENIED for this claim, ECF No. 85;

(3)(a) Leave to amend to assert the FAC's Third Claim as against Defendants Noeth and Schuessler is GRANTED, and (b) the Motion to Substitute to the extent it requests to replace Noeth with Superintendent of Attica Jane Doe, ECF No. 90, is DENIED;

---

[27] The Court notes that certain parties referred to in the FAC are not named in the Caption or Parties to Action section of the FAC. Therefore, those unnamed parties cannot be terminated from the action. If they are named in the Caption or Parties to Action section, the Clerk will be directed to terminate them as a defendant. The Court also directs the Clerk to amend the caption as it is set forth below. Further, the current official Caption of this action does not reflect each Defendant named in the FAC's Caption.

(4)(a) Leave to amend to assert the FAC's Fourth Claim is DENIED, and (b) the Clerk of Court is directed to terminate Defendants Maher, Boll, Bruen, Clinton, Dutty, Moore, Fonda, Wilson, Tenbrick, and Spangler as parties to this action;

(5)(a) Leave to amend to assert the FAC's Fifth Claim against Defendant Chudzik and Cross, only, is GRANTED, and (b) Defendant Annucci is dismissed as a Defendant on the Fifth Claim;

(6)(a) Leave to amend to assert the FAC's Sixth Claim against Defendants Annucci, Koenigsmann, Morley, Rao, Williams, Noeth, Graf, Schunk, Bonning, Hawley, M__Z__ #401, Hembrook, Bauer, Reddia, Schuessler, Roemesser, Donahue, Norton, Cross, and Chudzik is GRANTED, (b) Plaintiff's Motion for Miscellaneous Relief is DENIED to the extent it seeks to substitute Williams for Koenigsmann and Williams for Rao, ECF No. 85, and (c) Defendant Maher and Fonda are dismissed as Defendants on the Sixth Claim and the Clerk of Court is directed to terminate Maher as a party to this action;

(7)(a) Leave to Amend to assert the FAC's Seventh Claim is GRANTED with respect to the pre-existing claim against Defendant Schuessler and the October 13, 2015 claim against Donahue only, but DENIED with respect to all other claims and Defendants, and (b) any claims against Annucci, Bauer, Hembrook, Maher, Moore, and Spangler in the Seventh Claim are dismissed;

(8)(a) Leave to amend to assert the FAC's Eighth Claim is GRANTED to the extent it alleges a denial of hearing aids against Defendants Rao, Pritchard, Michalek, Artus, Gullo, and Buther, but DENIED to the extent it alleges a denial of eyeglasses against Annucci and Gullo, and (b) Defendants Annucci and Gullo are dismissed as Defendants on the Eighth Claim;

(9)(a) Leave to amend to assert the FAC's Ninth Claim is DENIED, and (b) Defendants Michalek, Williams, Schunk, Moore, and Spangler are dismissed as Defendants in the Ninth Claim;

(10)(a) Leave to amend assert the FAC's Tenth Claim is DENIED, and (b) Annucci and Artus are dismissed as Defendants in the Tenth Claim;

(11) Leave to amend to assert the FAC's Eleventh Claim is DENIED; and

(12) Leave to amend to assert the FAC's Twelfth Cause of Action, to the extent it is intended as a separate claim or part of the Eleventh Claim is DENIED; and it is further

ORDERED that Plaintiff's Motion to Substitute Parties and add a Supplemental Pleading, ECF No. 90, is DENIED; and it is further

ORDERED that the Clerk of Court shall add Defendants Dr. Koenigsmann and Dr. Rao as Defendants to the Caption of action and terminate Defendants Boll, Bruen, Maher, Clinton, Dutty, Moore, Tenbrick, Wilson, and Spangler; as parties to this action [28] and it is further

ORDERED that only the following claims alleged in the FAC may proceed: (1) the denial of Hep-C claim (First Claim) against Defendants Rao, Williams, Graf, Bonning, Michalak, Schunk, Artus, Koenigsmann, and Morley; (2) the denial of due process claim (Third Claim) against Noeth and Schussler; (3) the legal interference with mail claim (Fifth Claim) against Chudzik and Cross; (4) the conditions of confinement claim (Sixth Claim) against Annucci, Koenigsmann, Morley, Rao, Williams, Noeth, Graf, Schunk, Bonning, Hawley, "M__ Z__," RN #401, Hembrook, Bauer, Reddia, Schussler, Roemesser, Donahue, Norton, Cross, and Chudzki; (5) the retaliation claim (Seventh Claim) against Schussler and the October 13, 2015 incident

---

[28] The Court recognizes that some of these Defendants may not be listed currently in the official Caption of this action and/or the FAC's Caption, ECF No. 71 at 2-3, but due to the confusing nature of the FAC regarding who are the defendants, the Court finds it necessary to list these Defendants herein and to terminate them from this action to the extent listed or referred to in the Caption of this action or the FAC.

against Donahue; and (6) the denial of hearing aids claim (Eighth Claim) against Rao, Pritchard, Michalek, Artus, Gullo, and Buther;

ORDERED that the Clerk of Court is directed to amend the Caption of this action as follows, *see supra* at 28: Reginald Ghaffaar McFadden v. Anthony J. Annucci, Jr., AC-DOCCS, John Morley, MD-DC-DOCCS, Dr. Koenigsmann, MD-DC-DOCCS, Joseph Noeth, S-ACF, Dr. Rao, MD-ACF, Dr. Williams, MD-ACF, Deborah Graf, PA-ACF, Alicia Schunk, PA-ACF, Sandra Michalek, NA-ACF, Deborah Bonning, RN #425-ACF, Vincent Hawley, RN #284-ACF, M__Z__, RN #401-ACF, R. Roemesser, IA(C)-ACF, J. Cross, MRS-ACF, C. Chudzik, MRS-ACF, Eric Schuessler, CO-ACF, S. Reddia, CO-ACF, Norton, CO-ACF, Brian Hembrook, CO/LLS-ACF, D. Bauer-CO-ACF and Joseph Gullo, Aud-DOCCS.

IT IS SO ORDERED.

Dated:  September 14, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York